**Homer A. BREITBECK et al.**

v.

**The UNITED STATES.**

**No. 285–73.**

United States Court of Claims.

July 19, 1974.

Peter J. Hart, for plaintiffs; Edward L. Merrigan, Washington, D. C., attorney of record. Smathers, Merrigan & Herlong, Washington D. C., of counsel.

Steven J. Bercik, Elizabeth N. J., with whom was Asst. Atty. Gen., Carla A. Hills, for defendant.

Before LARAMORE, Senior Judge, and DAVIS and KASHIWA, Judges.

## ON DEFENDANT'S MOTION TO DISMISS THE PETITION

DAVIS, Judge:

This is another case presenting the question of whether the United States may be sued in this court on a claim arising out of the activities of a governmental entity which can be sued in its own name in another forum. *See* Butz Eng'r Corp. v. United States, 499 F.2d 619, 204 Ct.Cl. ——, (June 1974) (United States Postal Service); Porter v. United States, 469 F.2d 583, 204 Ct.Cl. —— (May 1974) (Trust Territory of the Pacific). The suit before us involves the Saint Lawrence Seaway Development Corporation created by Congress in 1954, as a wholly-owned federal corporation, to construct and operate the United States portion of the Saint Lawrence Seaway, 33 U.S.C. § 981 et seq. Plaintiffs are employees of the Corporation, engaged in aiding shipping vessels to enter and leave the locks maintained by their agency on the Saint Lawrence River. They assert that the Corporation failed to pay them all the wages properly owing them for the period of October 20, 1968 through July 27, 1969. The Government moves to dismiss the petition "for the reason that the suit is not properly one against the United States and therefore is not within the jurisdiction of this court under 28 U.S.C. § 1491." The action must be maintained, according to defendant, against the Corporation which "may sue and be sued in its corporate name" (33 U.S.C. § 984(a)(3)) and "shall be held to be an inhabitant and resident of the northern judicial district of New York within the meaning of the laws of the United States relating to venue of civil suits" (33 U.S.C. § 984(a)(6)).

In Butz Engineering Corp., *supra*, 499 F.2d pp. 621–623, the court recently collated the general law on suits in this court against the United States for claims stemming from the activities of federal corporations and agen-

cies which can be sued *eo nomine*. The prior decisions and *Butz Engineering* make it clear that action here is not precluded by the mere fact that the entity is a wholly-owned federal corporation which is itself suable in some other court. The critical questions, as formulated in *Butz Engineering*, are, first, whether the organization is functioning as an instrumentality of the Federal Government, and, second, whether the Government can demonstrate some special reason why this court is without jurisdiction, even though the agency is a federal instrument, to hear the claim.

On the first point there is little doubt in this instance. The Saint Lawrence Seaway Development Corporation was established by Congress as a wholly owned Government corporation (31 U.S.C. § 846), and made "subject to the direction and supervision of the Secretary of Transportation." 33 U.S.C. § 981. "The management of the Corporation shall be vested in an Administrator who shall be appointed by the President, by and with the advice and consent of the Senate." 33 U.S.C. § 982(a). The Deputy Administrator is likewise appointed by the President with the advice and consent of the Senate. 33 U.S.C. § 982(b). "The Corporation, its property, franchises, and income are expressly exempted from taxation in any manner or form by any State, county, municipality, or any subdivision thereof * * *," but may make payments "in lieu of property taxes upon property which was subject to State and local taxation before acquisition by the Corporation." 33 U.S.C. § 986. "All general penal statutes relating to the larceny, embezzlement, or conversion, of public moneys or property of the United States shall apply to the moneys and property of the Corporation." 33 U.S.C. § 990(a). The functions of the Corporation (33 U.S.C. § 983)—to construct the United States segment of the seaway; to operate and maintain it in conjunction with the Canadian Seaway Authority; to coordinate activities regarding power projects in that area—all fall directly within the federal authority over interstate commerce. Not only are the Corporation's activities under the direction and supervision of the Secretary of Transportation (33 U.S.C. § 981), but its tolls and charges are specifically subject to the approval of the President (33 U.S.C. § 988). Annual reports of the Corporation's operations are submitted to the President and the Congress (33 U.S.C. § 989).

■ These and other provisions of the legislation establishing the Corporation demonstrate that it is "an agency selected by the Government to accomplish purely Governmental purposes" (Cherry Cotton Mills, Inc. v. United States, 327 U.S. 536, 539, 66 S.Ct. 729, 730, 90 L.Ed. 835 (1946)), and that it is "'doing work of the Government.'" National State Bank of Newark v. United States, 357 F.2d 704, 708, 174 Ct.Cl. 872, 879 (1966). It is as much an instrumentality of the United States as the Reconstruction Finance Corporation (Cherry Cotton Mills, Inc. v. United States, *supra*, 327 U.S. 536, 66 S.Ct. 729, 90 L.Ed. 835; National Cored Forgings Co. v. United States, 132 F.Supp. 454, 458–459, 132 Ct.Cl. 11, 18–19 (1955)), the Federal Housing Administration (National State Bank of Newark v. United States, *supra*, 357 F.2d 704, 174 Ct.Cl. 872), and the United States Postal Service (Butz Eng'r Corp. v. United States, *supra*, 499 F.2d 619, 204 Ct.Cl. ——)—claims against which agencies have been held to be vindicable in this court by actions against the United States under the Tucker Act.

■ Are there solid reasons for holding, nevertheless, that a claim against this Corporation can be brought only against the agency itself? Defendant's primary point is that Congress designed the agency to be financially self-sufficient, and it would contradict that purpose to permit judgments on Corporation claims to be paid from the general funds of the Treasury. *Cf.* Kyer v. United States, 369 F.2d 714, 177 Ct.Cl. 747 (1966), cert. denied, 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967).

Ultimately the Corporation's revenue was to come from charges and tolls for use of the seaway's facilities and services (33 U.S.C. § 984(a)(10) and (11), § 988), but "[t]o finance its activities" it was also empowered to issue revenue bonds (in a total amount not greater than $140,000,000) payable from corporate revenue to the Secretary of the Treasury (33 U.S.C. § 985). The latter official is directed by the statute to purchase these bonds out of designated Treasury funds. Ibid.

By these provisions Congress did attempt to make the agency self-supporting, in general, in the long run, but there are likewise substantial indications that this was not to separate it wholly from the Treasury. The long run was quite extended since the bond maturities could be up to fifty years; meanwhile Treasury funds could and were expected to be used. Even in the long run, regular federal funds would still be involved. At the instance of the Corporation itself (represented by the United States Attorney), the Northern District of New York held that a tort claim, cognizable under the Federal Tort Claims Act, could not be maintained against the agency but had to be brought against the United States under the Tort Claims Act (with the judgment to be paid, of course, from general appropriated funds). Handley v. Tecon Corp., 172 F.Supp. 565 (N.D.N.Y.1959). Section 987(b) contemplates that employee retirement annuities (both longevity and disability) are to be paid by the Civil Service Commission from Treasury moneys and, similarly, disability payments for Corporation employees are made from the general employees' compensation fund.[1] There is, in short, no such clear cleavage between the Corporation's own funds and those of the United States that one can say that Congress wished to cut the agency entirely loose from the Treasury or from appropriated funds.

With regard to employee suits there are additional signs that it is proper to consider the Corporation an agent of the United States for the purpose of proceedings under the Tucker Act. Seaway workers are federal employees subject to the Classification Act, 5 U.S.C. § 5101 et seq., and the general schedule of pay rates, 5 U.S.C. §§ 5331–5338. See 33 U.S.C. § 984(a)(7). They are also covered by the general federal legislation on travel and transportation expenses. 5 U.S.C. § 5721 et seq. And as we have already noted, they receive their retirement annuities and disability compensation from federal funds administered by the United States. 33 U.S.C. § 987 (b). It would be anomalous to hold that suits for retirement pay could be brought under the Tucker Act but that actions for regular pre-retirement pay could lie only against the Corporation itself.[2]

Here, as in Butz Engineering Corp., supra, the defendant puts its trust in Abbott v. United States, 112 F.Supp. 801, 125 Ct.Cl. 330 (1953), holding this court without jurisdiction to entertain employee pay claims arising out of the operation of the Panama Canal Company. Our opinion in Butz Engineering Corp. declared that "Abbott represents a restricted reading of Tucker Act jurisdiction which appears out of keeping with the case law described above [in the Butz Engineering Corp. opinion] and, hence, should probably be contained to its facts." 499 F.2d at 627, 204 Ct.Cl. at ——. Moreover, the situation of the Panama Canal is different from that of the Saint Lawrence Seaway Develop-

---

1. The section requires the Corporation to contribute its proportionate share to the civil-service retirement and disability fund, and also to the employees' compensation fund. The Corporation is also liable for its "fair portion of the cost of the administration of the respective funds, which shall be paid by the Corporation into the Treasury as miscellaneous receipts."

2. The absence of any provision in the Seaway Act for reimbursing the Treasury for judgments rendered under the Tucker Act may be due to the date of enactment (1954), which antedated by several years the recent provisions to that effect in legislation passed in 1970 and later.

ment Corporation. Canal employees are not subject to the Classification Act (*see* 5 U.S.C. § 5102(a) and (c)(12)) or the general pay schedule (*see* 5 U.S.C. § 5331). The *Abbott* court concluded that "Congress seems to have wanted to cut it [the Canal] loose from the United States as far as possible." 112 F.Supp. at 804, 125 Ct.Cl. at 335. As already indicated, we cannot make the same observation in this case.

Accordingly, we hold that plaintiffs' claim meets the requirement of our general jurisdictional statute, 28 U.S.C. § 1491, that the petition state a "claim against the United States." The Government does not urge that any of the other requirements of § 1491 is missing. This court therefore has jurisdiction of the claim,[3] the defendant's motion to dismiss for lack of jurisdiction must be denied, and the case is remanded to the trial division for further proceedings in due course.

3. We do not, of course, decide whether or not plaintiffs' claim could also have been brought, alternatively, against the Corporation in the Northern District of New York.