**OPTIPERU, S.A., Plaintiff,**

v.

**OVERSEAS PRIVATE INVESTMENT CORPORATION, Defendant.**

**Civ. A. No. 85–3340.**

United States District Court,
District of Columbia.

April 22, 1986.

Joseph Sharlitt, Washington, D.C., for plaintiff.

Charles F. Flynn, Asst. U.S. Atty., U.S. Atty's. Office, Civ. Div., Washington, D.C., for defendant.

### MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

Optiperu, S.A. ("Optiperu"), a corporation organized under the laws of Peru, has filed a breach of contract action in this Court, seeking reliance and lost profits damages from Overseas Private Investment Corporation ("OPIC"), a corporation owned wholly by the federal government.[1]

---

**1.** Optiperu seeks reliance damages in the amount of $75,000 and lost profits damages totalling more than $1,000,000, for the alleged breach by OPIC of a loan commitment of up to $275,000 to Optiperu for an eyeglass-lens manufacturing project in Peru.

The matter before the Court concerns defendant's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. In consideration of the motion to dismiss, Optiperu's opposition, and OPIC's reply thereto, the Court concludes that dismissal under Rule 12(b)(1) is appropriate. In identifying 22 U.S.C. § 2199(d) as the basis for the Court's jurisdiction over this contract action, Optiperu has failed *in its complaint* to identify sufficient "grounds upon which the Court's jurisdiction depends." Fed.R.Civ.P. 8(a)(1). In addition, if Optiperu were afforded the opportunity to amend its complaint to add 28 U.S.C. § 1349 as its ground for jurisdiction—the additional ground relied upon by Optiperu in its opposition to OPIC's motion to dismiss—the Court would nevertheless dismiss the above-captioned case: under the Tucker Act, subject matter jurisdiction for Optiperu's contract claim lies appropriately in the United States Claims Court.

*Discussion*

I. *The Complaint's Jurisdictional Contention: 22 U.S.C. § 2199(d)*

In its complaint, Optiperu asserts that the Court has jurisdiction over Optiperu's contract claim under 22 U.S.C. § 2199(d). Section 2199(d) identifies the general corporate powers granted to OPIC by Congress. OPIC is authorized, *inter alia*, "to sue and be sued in its corporate name ...." Although this "sue and be sued clause" clearly represents a waiver of sovereign immunity as to OPIC, Section 2199(d) contains no express grant of jurisdiction to this or any other court to entertain an action brought by or against OPIC for an alleged breach of contract.

In *Portsmouth Redevelopment and Housing Authority v. Pierce,* 706 F.2d 471 (4th Cir.), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983), the Fourth Circuit held that a "sue and be sued clause," standing alone, merely waived sovereign immunity but did not confer subject matter jurisdiction on the district courts. In *Portsmouth,* the plaintiff argued that

the district courts had jurisdiction over a claim brought against the United States Housing Authority by virtue of 42 U.S.C. § 1404a, which provided that the Authority could "sue and be sued." *Id.* at 475. The plaintiff argued further that this clause of Section 1404a was the functional equivalent of another "sue and be sued" clause, found in 12 U.S.C. § 1702, which authorized the Secretary of Housing and Urban Development "to sue and be sued *in any court of competent jurisdiction, State or Federal.*" *Id.* (emphasis added). The Fourth Circuit, in *Ferguson v. Union National Bank,* 126 F.2d 753, 756–57 (4th Cir.1942), had earlier found that Section 1702 not only waived sovereign immunity, but also conferred subject matter jurisdiction on the district courts. The *Portsmouth* panel rejected the plaintiff's argument, however, drawing a critical distinction between the statute at issue in *Ferguson* and the statute at issue in *Portsmouth:* whereas Section 1702 contained an express jurisdictional grant, as found in the words "in any court of competent jurisdiction, State or Federal," Section 1404a did not. 706 F.2d at 475. The court concluded, therefore, that 42 U.S.C. § 1404a operated only as a waiver of sovereign immunity and not as a grant of jurisdiction to the district courts.

In *Van Drasek v. Lehman,* 762 F.2d 1065, 1071 n.10 (D.C.Cir.1985), the United States Court of Appeals for the District of Columbia Circuit cited approvingly the "sue and be sued" analysis of the Fourth Circuit in *Portsmouth.* In the present case, therefore, because 22 U.S.C. § 2199(d) authorizes OPIC only "to sue and be sued" in its corporate name, but fails to prescribe that suits brought by or against OPIC may be brought "in any court of competent jurisdiction, State or Federal," the Court holds that Section 2199(d) represents merely a waiver of sovereign immunity as to OPIC and not a grant of subject matter jurisdiction to district courts to entertain contract actions naming OPIC as plaintiff or defendant. *Cf. Breitback v. United States,* 205 Ct.Cl. 208, 500 F.2d 556, 557–58 & 560 n.2 (1974) (Saint Lawrence Seaway Development Corporation, which

"may sue and be sued in its corporate name," amenable to Claims Court jurisdiction and *perhaps* to jurisdiction of specific district court, where, under 33 U.S.C. § 984(a)(6), corporation "shall be held to be an inhabitant and resident of the northern judicial district of New York within the meaning of the laws of the United States relating to the venue of civil suits"). Moreover, Optiperu has failed in its complaint to name any other statutory provision specifically regarding OPIC, *see* 22 U.S.C. §§ 2191–2200b (1982 and Supp.1985), which could be so construed. Accordingly, because Optiperu, as plaintiff, bears the burden of establishing jurisdiction, and the basis of jurisdiction must appear on the face of the complaint, Optiperu's complaint shall be dismissed. *Tavoulareas v. Comnas,* 720 F.2d 192, 195 (D.C.Cir.1983); Fed. R.Civ.P. 8(a)(1).

II. *The "Tucker Act" vis-a-vis 28 U.S.C. § 1349*

■ In its motion to dismiss, OPIC not only argues correctly that 22 U.S.C. § 2199(d) does not confer jurisdiction on the Court over Optiperu's claim, OPIC contends that Optiperu's contract action falls under the Tucker Act, 28 U.S.C. §§ 1346(a) and 1491, so that this case belongs properly before the United States Claims Court. In its opposition to the motion to dismiss, however, Optiperu contests OPIC's Tucker Act contention by raising a second ground for this Court's jurisdiction, 28 U.S.C. § 1349, which provides as follows: "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was *incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock.*" (Emphasis added.)

Although Optiperu raises Section 1349 in its opposition, it has failed to cite this ground for jurisdiction in its complaint or to move to amend the same to include this new ground. Rather than order Optiperu to amend its complaint and thereby delay resolution of the subject matter jurisdiction

question, however, the Court has evaluated the merits of the Tucker Act/Section 1349 debate. After due consideration of the arguments raised and briefed by the parties in this regard, the Court concludes both that the Tucker Act applies to Optiperu's contract claim against OPIC, and that Section 1349 does not represent a manifestation of Congress' intent to establish this Court as an alternative forum to the Claims Court for the adjudication of Optiperu's contract action for more than $10,000 against OPIC. Therefore, jurisdiction over Optiperu's claim shall lie in the Claims Court.

A. *The Tucker Act: Claims for Money Damages Against the United States*

The Tucker Act consists of Sections 1346(a) and 1491 of Title 28 of the United States Code. 28 U.S.C. § 1346(a) provides in pertinent part as follows: "The district courts shall have original jurisdiction, *concurrent with the United States Claims Court,* of: * * * (2) Any ... civil action or claim *against the United States, not exceeding $10,000 in amount founded ... upon any express or implied contract with the United States....*" (Emphasis added.) 28 U.S.C. § 1491(a)(1) provides in relevant part as follows: "The United States Claims Court shall have jurisdiction to render judgment upon any claim *against the United States founded ... upon any express or implied contract with the United States....*" (Emphasis added.) Thus, for money claims against the federal government up to and including $10,000, the Tucker Act grants concurrent jurisdiction to the district courts and the Claims Court. If a contract claim is for more than $10,000, however, this Circuit and others have held that exclusive jurisdiction lies in the Claims Court under Section 1491. *See, e.g., Doe v. United States Department of Justice,* 753 F.2d 1092, 1101 (D.C.Cir.1985); *Graham v. Henegar,* 640 F.2d 732, 734 n. 5 (5th Cir.1981); *Marcus Garvey Square, Inc. v. Winston Burnett Construction Co.,* 595 F.2d 1126, 1132 (9th Cir.1979).

Although federal courts have thus generally characterized contract actions brought against the federal government according to the amount of damages in controversy, this simple bifurcation does not comprehensively delineate the jurisdictional framework of the Tucker Act. As made clear by this Circuit just last year:

> "*the jurisdiction of the Court of Claims for suits claiming more than $10,000 is not exclusive;* rather, there is rarely any statute available that waives sovereign immunity for suits in the district court, other than the Tucker Act with its $10,000 limit." The proper inquiry, then, is *whether the statute or statutes relied upon by the plaintiff manifest a congressional intent to consent to suits for money claims against the United States in the district courts notwithstanding the limitations found in the Tucker Act.*

*Van Drasek,* 762 F.2d at 1071 n. 10 (quoting *Ghent v. Lynn,* 392 F.Supp. 879, 881 (D.Conn.1975)). There is clearly more than $10,000 in controversy in Optiperu's contract action against OPIC. *See supra* note 1. Therefore, if the Tucker Act applies to this case (*see infra* Part II. B.), and if 28 U.S.C. § 1349, the jurisdictional statute cited by Optiperu in its opposition, does not demonstrate a specific exception to the $10,000 limit rule (*see infra* Part II. C.), jurisdiction for this action lies exclusively in the Claims Court. *See Spectrum Leasing Corp. v. United States,* 764 F.2d 891, 895 n. 8 (D.C.Cir.1985).

### B. *Applicability of the Tucker Act*

28 U.S.C. § 1491, which defendant OPIC relies on, grants jurisdiction to the Claims Court over contract claims brought "against the United States," where the plaintiff seeks more than $10,000 in money damages. Thus, for a contract claim to be based upon the Tucker Act—here, upon Section 1491(a)(1)—it must be founded upon a contract that " 'can fairly be interpreted as *mandating compensation by the Federal government for the damages sustained.*' " *Van Drasek,* 762 F.2d at 1070 (quoting *United States v. Mitchell,* 463

U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ). "The existence of a substantive right to recovery against the United States is a *jurisdictional* prerequisite to suit under the Tucker Act." 762 F.2d at 1070 n. 7 (emphasis in original). If Optiperu's contract claim for more than $10,000 against OPIC, a corporation owned wholly by the United States, is properly characterized as a claim that would require, if prosecuted successfully, compensation from the federal government, Optiperu's claim falls under the Tucker Act.

The Claims Court has held that a contract action under the Tucker Act "is not precluded by the mere fact that the entity is a wholly-owned federal corporation." *Breitback,* 500 F.2d at 558 (discussing *Butz Engineering Corp. v. United States,* 204 Ct.Cl. 561, 499 F.2d 619 (1974)). The analysis required is two-tiered: A contract claim for more than $10,000 against such a corporation is subject to 28 U.S.C. § 1491 and, thereunder, the jurisdiction of the Claims Court, if, first, the defendant organization is *"functioning as an instrumentality of the Federal government"*; and, second, the party asserting district court jurisdiction cannot *"demonstrate some special reason"* why the Claims Court is without jurisdiction even though the agency is a federal instrumentality. 500 F.2d at 558 (emphasis added). *See infra* Part II. C.

After careful evaluation of the statutory provisions pertinent to OPIC's creation and operation, 22 U.S.C. §§ 2191–2200b (1982 and Supp.1985), the Court concludes that OPIC is an "instrumentality" of the federal government, and, accordingly, that the Tucker Act applies to Optiperu's contract claim.

OPIC's authority to issue the loan commitment at issue in this case is found in the mandate of Congress that established OPIC in order "[t]o mobilize and facilitate the participation of United States private capital and skills in the economic and social development of less developed friendly countries and areas, thereby *complementing the development assistance objectives*

*of the United States ...." Id.* § 2191 (emphasis added). Thus, OPIC was expressly created by Congress as *"an agency of the United States under the policy guidance of the Secretary of State." Id.* (emphasis added).[2] Furthermore, although OPIC is authorized by Congress to carry out commercial activities that can be characterized as private in nature,[3] OPIC's transactions must further the policy interests of the federal government. *See, e.g., id.* § 2191(e)(1) & (2) (OPIC to give preferential consideration to projects sponsored by or involving "United States small business"); *id.* § 2191(h) (OPIC to further to "greatest degree possible ... the balance—of-payments and employment objectives of the United States"); and, *id.* § 2191(i) (OPIC to conduct "activities in consonance with ... [the] activities of ... [the] agency primarily responsible for administering ... international trade, investment, and financial policies of the United States Government, and to seek to support ... projects having positive trade benefits for the United States").

Nonetheless, even though OPIC is clothed with all of the trappings of a federal "instrumentality," Optiperu argues that, because of the nature of the transaction at issue—*i.e.*, the loan commitment negotiations—OPIC is not entitled to an instrumentality characterization by the Court.

In evaluating Optiperu's argument, the Court notes initially that OPIC is empowered by Congress to participate in three primary types of transactions[4]: First, OPIC may *"issue insurance"* to eligible investors, *id.* § 2194(a)(1); second, OPIC may issue "guaranties of loans," *id.* § 2194(b); and third, OPIC may *"make loans ...* to firms privately owned or of mixed private and public ownership upon such terms and conditions as ... [OPIC] may determine ...." *id.* § 2194(c) (emphasis added). The loan commitment negotiations at issue fall under the last of these provisions.

Where insurance and guaranties are concerned, "Congress, in considering the budget programs transmitted by the President for ... [OPIC], may limit the obligations and contingent liabilities to be undertaken ... as well as the use of funds for operating and administrative expenses." *Id.* § 2195(a)(4). Moreover, "[t]here shall be established *in the Treasury of the United States an insurance and guaranty fund,* which shall have separate accounts to be known as the Insurance Reserve and the Guaranty Reserve, which reserves shall be available for discharge of liabilities." *Id.* § 2195(c).

On the other hand, Congress apparently possesses no corresponding power of limitation over "obligations and contingent liabilities to be undertaken" by OPIC where direct investment loans are concerned. In addition, as Optiperu points out, "[t]here shall be established *a revolving fund, known as the Direct Investment Fund, to be held by ... [OPIC]. Such fund ...*

---

**2.** Moreover, as a "wholly owned government corporation," 31 U.S.C. § 9101(3)(G), OPIC is subject to the Government Corporation Control Act, *id.* §§ 9101–9109 (1983): each year OPIC must furnish the President with "a business type budget," *id.* § 9103(a); then, in turn, the President must submit these budget programs "as part of the budget submitted to Congress" for approval, *id.* § 9103(c), and Congress must then "make necessary appropriations authorized by law," *id.* § 9104(a)(2); all financial transactions of OPIC are audited by the Comptroller General "at least once every 3 years," *id.* § 9105(a)(1) & (2), and audit reports must be submitted to Congress for review, *id.* § 9106; OPIC's "accounts" are required to be kept by the Secretary of the Treasury (unless the Secretary waives this requirement), *id.* § 9107(b); and, before OPIC "issues obligations and offers obligations to the public ...," the Secretary of the Treasury must prescribe the standards applicable to the obligations in question, *id.* § 9108(a).

**3.** *E.g.,* 22 U.S.C. § 2194 (OPIC authorized to issue "investment insurance" and "investment guarantees," to make loans ("direct investments"), encourage investments, administer and manage "special projects and programs," and make and carry out "additional insurance functions").

**4.** Under 22 U.S.C. § 2194(d)-(f), OPIC may also initiate and support investment encouragement, administer and manage special projects and programs, and make and carry out additional insurance functions. *See supra* note 3.

*shall be available for ... [loans]* authorized under ... [22 U.S.C. § 2194(c) ] ...." *Id.* § 2195(b) (emphasis added.) Finally, *"all revenues and income* transferred to or earned by ... [OPIC], from whatever source derived, *shall be held by ... [OPIC]* and shall be available to carry out its purposes, including without limitation—(a) *payment of all expenses of ... [OPIC]* ...." *Id.* § 2196 (emphasis added.) Optiperu maintains that "expenses" payable by OPIC under Section 2196(a) would include satisfaction of a judgment arising from a successful breach of contract action against OPIC.

In sum, Optiperu argues that the Court may not properly characterize OPIC as an instrumentality of the federal government, because Congress retains no express power of limitation over the obligations and contingent liabilities to be undertaken by OPIC in a loan context, because OPIC holds the Direct Investment Fund from which loans are made available, and because a judgment against OPIC would be payable as an expense out of the revenues and income held by OPIC. Optiperu concludes, therefore, that this contract action against OPIC for more than $10,000 is not subject to the Tucker Act: as an entity that can "sue and be sued" in its corporate name under 22 U.S.C. § 2199(d) (*see supra* Part I), OPIC's legal identity is wholly separate from that of the federal government; and, accordingly, recovery would not come from the United States Treasury.

Although impressive analytically, Optiperu's argument proves merely to highlight distinctions without differences. First, although it is true that no express provision prescribes for Congress a power of limitation over obligations and contingent liabilities to be undertaken by OPIC in a loan context (vis-a-vis, insurance or guaranty contexts), OPIC, a designated "agency of the United States" under 22 U.S.C. § 2191, is subject to the express congressional proscription that "[l]oans may be made ... *only for projects that are sponsored by or significantly involve United States small business or cooperatives." Id.* § 2194(c)(2) (emphasis added). Thus, Congress has, in

fact, by statute restricted OPIC's authority to extend loans to achieve a single legislative purpose. Whenever OPIC enters into loan commitment negotiations with a firm such as Optiperu, it acts, necessarily, as an agent of the federal government.

Second, the fact that the funding for direct investment loans is held by OPIC while the reserve accounts for insurance and guaranties are established in the United States Treasury is readily justifiable in practical terms, and in nowise weakens OPIC's status as an instrumentality of the federal government. In an insurance or guaranty context, OPIC becomes liable to a qualified investor only if that investor suffers losses that result from the materialization of risks originally contemplated in the pertinent insurance or guaranty agreement. OPIC never uses this funding unless and until it· is needed; and, in the meantime, the respective reserve accounts are more appropriately retained and managed by the Treasury. In contrast, in order for OPIC to operate efficiently as an agency that extends loans for projects that are sponsored by or significantly involve United States small business or cooperatives, OPIC must have available funding directly in hand. It is difficult, if not impossible, for the Court to conceive of how OPIC could effectively manage its congres·sionally mandated loan program if Congress had required OPIC to turn to the Treasury Department each and every time OPIC approved a loan application submitted by a qualified business firm. Although the funding mechanism prescribed by Congress for OPIC's insurance and guaranty programs differs from the mechanism prescribed for OPIC's loan program, the Court will not deny OPIC an instrumentality characterization under the Tucker Act on this basis.

Finally, Optiperu's contention that any judgment secured by it in this contract action would be satisfied out of OPIC's own funds, because under 22 U.S.C. § 2196(a) all of OPIC's "expenses" are to be satisfied out of the revenue and income held solely by OPIC, does not require the

Court to eradicate OPIC's status as a federal instrumentality. If Optiperu prevails ultimately on its claim, OPIC may very well prove to satisfy the resulting judgment out of its own revenues and income. Nevertheless, as OPIC, through its counsel, the United States Attorney for the District of Columbia, concedes readily in its motion to dismiss (at 3–4 & n. 13), where an agency is functioning as an instrumentality of the federal government, and that agency has the power to sue or be sued in its own name, the concurrent liability of the United States as a principal is not necessarily nullified. *Butz Engineering*, 499 F.2d at 625. Thus, the United States would be jointly or severally liable for any money damages obtained by Optiperu in the appropriate forum. Optiperu may be required, therefore, to name the United States as a defendant. *See Gibbons v. Republic of Ireland*, 532 F.Supp. 668, 671 & n. 3 (D.D.C. 1982) (Gesell, J.) (although immunity of United States not abrogated when Congress provides merely that agency or instrumentality may sue or be sued, "United States may be proper party defendant" where action arises from conduct of agency with power to sue and be sued and independent waiver of immunity of United States—such as Tucker Act—is applicable to action in question).[5]

The Court concludes that, because Optiperu's contract claim for more than $10,000 against OPIC is a claim for money damages against the United States, Optiperu's action falls under the Tucker Act.

### C. *28 U.S.C. § 1349*

Where the Tucker Act applies, jurisdiction over a claim for money damages against the United States in excess of $10,-000 lies exclusively in the Claims Court, unless the party seeking district court jurisdiction can demonstrate "some special

reason" why the Claims Court lacks jurisdiction. *Breitback*, 500 F.2d at 558. More specifically, the "question turns solely on whether Congress has manifested an intent to provide an alternative forum for adjudication of claims that would otherwise fall under the Tucker Act." *Spectrum Leasing*, 764 F.2d at 895 n. 8. In its opposition to OPIC's motion to dismiss ("*Opp.*"), Optiperu asserts that 28 U.S.C. § 1349 represents such a manifestation of congressional intent for contract claims brought against OPIC.

Section 1349, a "special federal question" provision, provides as follows: "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, *unless the United States is the owner of more than one-half of its capital stock.*" (Emphasis added.) Optiperu asserts that "[t]he implication fairly drawn from Section 1349 is that a corporation that is more than 50% owned by the U.S. Government and is created by an act of Congress (both of which requirements are met by OPIC) is amenable to the jurisdiction of ... [this] court." *Opp.* at 3. Thus, without having amended its complaint to include Section 1349, Optiperu contends that this section confers jurisdiction on the Court to entertain Optiperu's contract claim.

Optiperu relies, however, too heavily on this simple reading of Section 1349. In *Graham*, 640 F.2d at 734, the Fifth Circuit held that neither 28 U.S.C. § 1331 (general federal question jurisdiction) nor 28 U.S.C. § 1337 (commerce clause jurisdiction) could be used to override the exclusive jurisdiction of the Claims Court over contract claims against the United States in excess of $10,000 as enunciated by the Tucker Act. As the *Graham* panel made clear:

---

**5.** In addition, Congress has not manifested its intent that OPIC be entirely self-sufficient financially. Although under 22 U.S.C. § 2195(b) OPIC holds the funding from which OPIC extends loans to qualified firms, loans made by OPIC "from the Direct Investment Fund are authorized for any fiscal year *only to the extent or in such amounts as provided in advance in*

*appropriation Acts.*" *Id.* § 2195(b) (emphasis added). *See Breitback*, 500 F.2d at 558–59 (where Congress indicates no "clear cleavage" between wholly owned corporation's funds and those of Treasury or appropriated funds, corporation is still instrumentality of United States and subject to Claims Court jurisdiction under Tucker Act).

Because adjudication in a federal district court of a lawsuit that falls within the exclusive jurisdiction of the Court of Claims would seriously undermine the purposes of the Tucker Act, courts confronting the issue have consistently held that *the Court of Claims is the sole forum for the adjudication of such a claim, even though the claim would otherwise fall within the coverage of some other statute [e.g., 28 U.S.C. § 1349] conferring jurisdiction on the district court.*

640 F.2d at 734 (emphasis added). The law of this Circuit is consistent with the analysis of *Graham.* As both *Spectrum Leasing,* 764 F.2d at 895 n. 8, and *Van Drasek,* 762 F.2d at 1071 n. 10 make clear, Congress must have manifested a clear intent to provide an alternative forum—*e.g.,* the district courts—for the adjudication of a claim that would otherwise lie within the exclusive jurisdiction of the Claims Court under 28 U.S.C. § 1491. Even though Optiperu contends that "[t]here is an abundance of law involving governmentally-owned corporations ...," apart from the Tucker Act and under 28 U.S.C. § 1349, it fails to cite—and the Court has failed to locate—a single case, in this or any other Circuit, that has specifically held that Congress intended Section 1349 to override Section 1491 where OPIC is the defendant in a breach of contract action for more than $10,000. The Court refuses, therefore, to give Section 1349 the broad reading Optiperu requests in the present case, and Optiperu's claim, a claim falling under the Tucker Act, shall be dismissed for want of this Court's jurisdiction. *See Breitback,* 500 F.2d at 560.

An order in accordance with the terms of this opinion is being issued by the Court contemporaneously herewith.

## ORDER

In accordance with the Court's Memorandum Opinion issued contemporaneously herewith, it is by the Court this 21st day of April, 1986, hereby

ORDERED that defendant's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) is GRANTED; and it is

FURTHER ORDERED that the above-captioned action is dismissed.