**James J. EDGAR and Mary K. Edgar on behalf of Jamie K. EDGAR, their daughter, Petitioners,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–711V.

United States Court of Federal Claims.

Sept. 21, 1993.

---

Patrick J. Gilmartin, New York City, Atty. of Record, for petitioners.

David L. Terzian, Washington, DC, with whom was Asst. Atty. Gen., Stuart M. Gerson, for respondent.

1. 42 U.S.C.A. § 300aa–21(a). Reference to the Program is to the relevant subsection of "42

## ORDER

HARKINS, Senior Judge:

This case is now before the court on petitioners' motion, filed June 11, 1993, to alter or amend the judgment that was filed June 3, 1993. Petitioners' motion states it was filed pursuant to RCFC 59(a)(1) or alternatively RCFC 60(a). Inasmuch as the motion was filed timely pursuant to RCFC 59(d) and accords with the instructions in Vaccine Rule 31, it is treated as a RCFC 59 motion.

■ A motion under RCFC 59 is viewed as a continuation of the present proceeding. As such, for purposes of Program Section 21(a) [1], Election, it has the effect of deferring judgment. A motion under RCFC 60, in contrast, is viewed as a new action for relief from judgment. A motion under RCFC 60, which may be filed within 1 year, is a motion for extraordinary relief entrusted to the discretion of the court. *United States v. Atkinson,* 748 F.2d 659, 660 (Fed. Cir.1984). If petitioners' motion were to be viewed as a RCFC 60 motion, jurisdictional issues relevant to a Section 21 election could be raised. *See Placeway Constr. Corp. v. United States,* 19 Cl.Ct. 484, 486–88 (1990); *Yachts America, Inc. v. United States,* 8 Cl.Ct. 278, *aff'd,* 779 F.2d 656 (Fed.Cir.1985), *cert. denied sub nom., Wilson v. United States,* 479 U.S. 832, 107 S.Ct. 122, 93 L.Ed.2d 68 (1986).

In this case, after the petition was filed on August 1, 1990, respondent conceded entitlement, and subsequent proceedings have been limited to determining the compensation awards. The compensation awards are of two types: (1) an award for future medical expenses to be provided through an annuity, and (2) a lump sum payment to compensate for past and future pain and suffering, lost earnings, and past unreimbursed expenditures. The award for future medical expenses is an annual amount $172,526.06, to be adjusted by a growth factor of 4 percent compounded annually. The lump sum payment for pain

U.S.C.A. § 300aa–____."

and suffering, lost earnings, and unreimbursed expenses ultimately has been fixed at $410,391.33.

The award for future medical expenses was established by the special master in a decision dated August 23, 1991. Neither party has sought review of this portion of petitioners' compensation. The lump sum payment, however, has been the subject of two appeals. The special master's decision on October 24, 1991, was appealed to this court by both parties, and this court's April 29, 1992, corrected judgment was appealed by petitioners to the CAFC.

Petitioners' RCFC 59(a) motion to alter or amend the judgment seeks: (1) a correction of the award for future medical expenses that would allocate a portion ($18.907) of the 4 percent annual inflation factor for each day between the date of judgment to the date the annuity is purchased; and (2) post-judgment interest on the lump sum payment of $410,391.33 from the date of judgment to the date of payment.

Proceedings in this case have been protracted and there is need to clarify the decisions that have issued on petitioners' compensation awards. The August 23, 1991, decision of the special master awarded compensation for future medical expenses, and specifically noted that awards for pain and suffering and lost wages remained to be determined. Shortly after the August 23, 1991, decision, the special master left Government service and the case was assigned to a new special master. The October 24, 1991, decision of the new special master encompassed both an award for future medical expenses and a lump sum payment for pain and suffering, and for lost earnings. Both parties sought review of the special master's October 24, 1991, decision. The April 28, 1992, decision of this court (26 Cl.Ct. 286 (1992)) encompassed both the annuity award and the lump sum award. The special master's decision as to compensation for future medical expenses, pain and suffering and lost earnings, was upheld and an additional amount requested by petitioners for past unreimbursed expenditures was awarded.

A judgment was entered on April 28, 1992, that did not include the addition for past unreimbursed expenditures; the corrected judgment which was filed April 29, 1992, included the addition for past unreimbursed expenditures.

The April 29, 1992, corrected judgment provided that petitioners were "awarded compensation as set forth in the [April 28, 1992] order." This judgment upheld the compensation for future medical expenses as set forth in the special master's October 24, 1991, decision. The lump sum payment as set forth in the April 28, 1992, order, with the addition for past unreimbursed expenses, was apportioned as follows:

| | | |
|---|---|---|
| Past Pain and Suffering | $100,000 | |
| Future Pain and Suffering | 50,000 | |
| Total | | $150,000 |
| Lost Earnings | | 127,048 |
| Past Unreimbursed Expenses | | 5,504.98 |
| Total | | $282,552.98 |

Petitioners took an appeal to the Court of Appeals for the Federal Circuit on the amount awarded for lost earnings. The Federal Circuit on March 11, 1993, decided the appeal in petitioners' favor and vacated the part of the judgment that awarded petitioners $127,048 for lost earnings and ordered judgment be entered awarding $254,886.35 for lost earnings. Respondent filed a petition for rehearing, which was denied on May 25, 1993. The mandate of the Federal Circuit decision of March 11, 1993, issued on June 1, 1993. The order on remand, filed June 2, 1993, stated:

In accordance with the mandate, the judgment entered April 29, 1992, is amended to award compensation to petitioners as follows:

| | | |
|---|---|---|
| Past Pain and Suffering | $100,000 | |
| Future Pain and Suffering | 50,000 | |
| Total | | $150,000.00 |
| Lost Earnings | | 254,886.35 |
| Past Unreimbursed Expenses | | 5,504.98 |
| Total | | $410,391.33 |

The judgment on which petitioners' motion is based was filed on June 3, 1993. The June 3, 1993, judgment amended the April 29, 1992, corrected judgment so as to increase the lump sum award to $410,391.33. It did not, however reiterate in detail provisions applicable to the compensation for future medical expenses.

### Future Medical Expenses

Petitioners request that the award for future medical expenses be corrected to reflect the application of the 4 percent annual inflation factor for a period that begins on one of three potential judgment dates and ends when the annuity is actually purchased. This calculation would be one in which the total payment for the first 365 days after the date the annuity is purchased is the annual total for future medical expenses ($172,526.06), plus $18.907 (daily rate for 4 percent annual inflation factor, i.e., $172,526.06 times 4 percent, divided by 365) for each day between the appropriate judgment date and the date of purchase.[2]

Petitioners suggest the beginning date for this calculation as being either September 23, 1991 (the date a partial judgment could have been entered on the special master's August 23, 1991 decision), October 24, 1991 (the date the special master's decision encompassed both the annuity for future medical expenses and the lump sum payment), or April 29, 1992 (the date of the corrected judgment after review of the October 24, 1991, decision). Petitioners' memorandum in support of their request for post-judgment relief provides no legal authority for backdating the application of the 4 percent growth factor to the award for future medical expenses beyond the date of the original corrected judgment in this case.

Petitioners emphasize that, under the Program, judgment on a special master's decision is authorized after 30 days if review is not sought. Hence, the suggested September 23, 1991, start date. The Au-

gust 23, 1991, decision of the first special master, however, by its terms was incomplete, and a judgment could not have been entered 30 days thereafter. Although the special master's October 24, 1991, decision was complete in that it provided compensation for both an annuity and a lump sum payment, and judgment could have been entered thereon, it is not an appropriate date for entry of judgment, even as to the annuity portion, because review of the special master's decision, as authorized by statute, was sought. Petitioners concede that the April 28, 1992, decision and the April 29, 1992, corrected judgment is an appropriate start date for calculation of the annuity adjustment petitioners request.

The corrected judgment entered April 29, 1992, was appealed by petitioners pursuant to Section 12(f). Although the entire judgment was before the CAFC, and as a consequence was subject to change as to any item, the CAFC's action applied only to the lump sum payment. The March 11, 1993, decision of the CAFC vacated only that part of the corrected judgment relative to lost earnings, and ordered judgment only as to that item in the lump sum payment.

In cases under the Program, an award for future medical expenses runs from the date of judgment. Section 15(a)(1)(A). In this case, the corrected judgment entered April 29, 1992, included the petitioners' claim for future medical expenses. Accordingly, the decision on future medical expenses of $172,526.06 was for the first post-judgment year, i.e., the period April 29, 1992, to April 28, 1993. The payment for future medical expenses for the second post-judgment year—April 29, 1993, to April 28, 1994—will increase by 4 percent, as the special master directed. Payments for all future years will be inflated similarly. Accordingly, to the extent petitioners seek to apply the 4 percent growth rate to future medical expenses as of the date of the corrected judgment, action on petition-

---

**2.** Petitioners also calculate that if such adjustment is not made, respondent would pay out $14,952.258 less per month for each month elapsing between the first anniversary of the judgment date and the date the annuity is actually purchased ($172,526.06 plus 1/12th of 104 percent of that amount).

ers' motion to alter or amend the judgment is not necessary.

Petitioners seek $18.907 for each day between April 29, 1992, and the date an annuity actually is purchased. Petitioners recognize, that, as a practical matter, resolution of this issue "is of no immediate consequence" in the light of payments presently made by Medicaid. In the long term, however, petitioners are concerned with future contingencies and changes in the Medicaid program.

Petitioners provide practical—but entirely speculative—reasons for allocating a portion of the growth factor from as early a date as possible. There is no legal authority, however, for the correction requested.

Petitioners rely upon the equitable nature of the Program reflected in the legislative history that the Program should be conducted in a fair, generous, less adversarial manner. Petitioners accuse respondent of excessive lawyering, and of a pettifogging technical time objection in respondent's argument that objections to the ambiguity in the application of the growth factor should have been raised as part of the review of the special master's decision before the corrected judgment was entered. Petitioners chastise respondent for having "a clenched fist for a soul."

Petitioners point out that every element of the compensation awarded, except the annuity for future medical expenses, has been the subject of at least one appeal, and argue that if the awards had been legally correct in the first instance, the time spent on appeals would not have been consumed, and the annuity would long since have been purchased. By not docilely accepting an erroneous award, petitioners argue that Jamie Kay Edgar must suffer the adverse consequences of having her health care annuity diminish in proportion to the appellate time it took to get legally correct results.

Petitioners point to the novel aspects of the Program which put special masters in the position of administrative officials outside both the Executive and Judicial Branches for some purposes. The Office of Special Masters is seen as an administrative agency established in the Judicial Branch. Notwithstanding petitioners' complaints, these characteristics warrant close adherence to the statutory framework that has been erected for this novel Program. The statute provides for a three tier administrative and review process: (1) decision by a special master, (2) review in this court, and (3) review by the Federal Circuit. While informality and less adversarial proceedings are mandated and expected, the Program must conform with the statutorily defined procedure. When new, and, for the Judiciary, unaccustomed, administrative procedures are initially set in motion, definition of new terms, and correction of errors made in the lower tiers in application of legal standards, necessarily involves expenditures of time in the review process.

Petitioners complain about excessive lawyering and delay in implementing the judgment. Petitioners, however, have participated in correcting errors made in the lower tiers as well as in the clarification of statutory concepts. In the process, petitioners' compensation has been increased an additional $50,000 for future pain and suffering, $127,838.35 for lost earnings, and $5,504.98 for past unreimbursed expenses. While postponement of the purchase of the annuity is unfortunate, such delay is the necessary product of the appellate process established by statute.

*Lump Sum Payment*

■ Petitioners argue that the judgment should be amended to include post-judgment interest between the date of judgment and the date compensation is actually paid on the lump sum award of $410,391.33.

■ The general rule regarding an award of interest against the government is straightforward. In *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), the Court stated "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." *Id.* at 314, 106 S.Ct. at 2961. The government's consent to the "payment

of interest must be found in either a special statute or an express contractual provision." *Zumerling v. Marsh*, 783 F.2d 1032, 1034 (Fed.Cir.1986). *See United States v. Thayer–West Point Hotel Co.*, 329 U.S. 585, 588, 67 S.Ct. 398, 399, 91 L.Ed. 521 (1947) ("interest cannot be recovered against the United States upon unpaid accounts or claims in the absence of an express provision to the contrary in a relevant statute or contract."). The congressional authorization to permit interest cannot be implied, and must be strictly construed. *Zumerling*, 783 F.2d at 1034.

The traditional rule has been codified for the Court of Federal Claims at 28 U.S.C. § 2516(a).[3] Clearly, in the Program there is no contract. There are no express contractual clauses that provide for payment of interest and there is no explicit statutory provision that authorizes this court to award interest in the Program. Petitioner so concedes, but argues that the legislative history of the Program is convincing that post-judgment interest must be paid on a special master's award or a court judgment in a vaccine case. This result, petitioners say, is because the statute creates a Program in which fair, just and generous awards would be made for vaccine injuries and not via dragged out proceedings, such as in this case. Petitioners are of the view that if Program objectives are ever to be attained, it must be made clear that interest does accrue on awards in favor of petitioners during the review and appeal process, at least when the position of the petitioners is sustained. Such an argument should be addressed to Congress; the court lacks discretion to apply the statute in the manner petitioners suggest.

Precedent requires a high threshold be satisfied before a waiver of sovereign immunity can be found. To award interest, there must be two express waivers of sovereign immunity. The first is a general waiver of immunity, which the Vaccine Act provides, and the second is a specific statute consenting to the award of interest.

*Shaw*, 478 U.S. at 314, 106 S.Ct. at 2961 ("This requirement of a separate waiver reflects the historical view that interest is an element of damages separate from damages on the substantive claim.").

Congress has not provided an express statute that authorizes this court to award interest in vaccine cases. Inasmuch as there is no statutory authority for this court to award post-judgment interest in a vaccine case, petitioners' request for remand to the special master with instructions to award such interest must be denied.

■ Petitioners argue that a claim brought pursuant to the Program is not a claim against the United States in its sovereign capacity. Petitioners focus on the Vaccine Injury Compensation Trust Fund as an entity that is sufficiently independent of the Government so that public funds of the sovereign are not exposed. Petitioners note that when an instrumentality is cut entirely loose from appropriated funds, a judgment against that instrumentality is not a judgment against the sovereign in its sovereign capacity. Petitioners cite cases that involve government created corporations; the cases cited do not support petitioners' contentions.

In *Breitbeck v. United States*, 205 Ct.Cl. 208, 500 F.2d 556 (1974), the court found that a claim against the Saint Lawrence Seaway Development Corporation stated a claim against the United States, and the court possessed jurisdiction under the Tucker Act. *Id.* at 209. The decision was based on the facts that the entity was created to accomplish federal purposes, its employees were federal employees subject to general federal laws, and that although it was designed to be self-sufficient, the corporation used federal funds. In *Butz Eng'g Corp. v. United States*, 204 Ct.Cl. 561, 499 F.2d 619 (1974), the court held that a suit against the "independent" Postal Service was a suit against the United States in its sovereign capacity. In *Abbott*

---

**3.** 28 U.S.C. § 2516(a) provides:
Interest on a claim against the United States shall be allowed in a judgment of the United States Court of Federal Claims only under a contract or Act of Congress expressly providing for payment thereof.

*v. United States,* 125 Ct.Cl. 330, 112 F.Supp. 801 (1953), the court did find the federal "corporation" to be separate from the United States as a sovereign. Subsequent Court of Claims' decisions limited *Abbott* to its facts. *Butz,* 204 Ct.Cl. at 576, 499 F.2d 619 ("*Abbott* represents a restricted reading of Tucker Act jurisdiction which appears out of keeping with the case law ... and, hence, should probably be contained to its facts."); *see also Breitbeck,* 205 Ct.Cl. at 213, 500 F.2d 556.

The Vaccine Injury Compensation Trust Fund is not analogous to a government created corporation that operates as an equivalent to a private commercial enterprise. Federally constituted corporations such as the Panama Canal Company, Postal Service, and the Saint Lawrence Seaway Development Corporation are designed to function in a business-like manner. Each seeks to be self-supporting by providing services for a fee. Unlike those corporations, the Vaccine Injury Compensation Trust Fund provides no services and does not operate as a private business. The Trust Fund is nothing more than a segregated amount within the Treasury from which certain claims are paid. It is a depository for taxes collected. As respondent says, the Trust Fund is "nothing more than a pot of federal money." The fact that the Trust Fund may be self-supporting does not make it wholly independent of the federal government.

██ It is axiomatic that sovereign immunity applies whenever a judgment would expend itself upon the public treasury. *Land v. Dollar,* 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947). It is equally true that the Program creates a claim against the Treasury where none previously existed. It does so by defining who may bring the claim, the permissible scope of the claim, and the particular court in which the claim must be pursued. These are the hallmarks of a waiver of sovereign immunity. *Broughton Lumber Co. v.*

**4.** This criteria was taken from the December 1990 draft of the Uniform Periodic Payment of

*Yeutter,* 939 F.2d 1547, 1550 (Fed.Cir. 1991).

The Program constitutes a limited waiver of sovereign immunity. On the basis of the foregoing, petitioners' request for post-judgment interest for the period from the date of the corrected judgment, April 29, 1992, to the entry of final judgment must be denied.

*Conclusion*

In view of the number of previous decisions in this case, it is appropriate to state at one place the compensation that is included in the judgment for petitioners. Petitioners' entire compensation awarded under the Program is as follows:

1. Compensation annually in the amount of $172,526.06 is awarded for future medical expenses. This amount shall be provided through an annuity purchased and owned by respondent bought from an insurance company that meets the following criteria: [4]

A. have a minimum of $100,000,000 of capital and surplus, exclusive of any mandatory security valuation reserve; and

B. have one of the following ratings from two of the following rating organizations:

(i) A.M. Best Company: A+, A+g, A+p, Atr, or A+s;

(ii) Moody's Investors Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

(iii) Standard and Poor's Corporation Insurer Claims—Paying Ability Rating: AA−, AA, AA+, or AAA; and

(iv) Duff & Phelps Credit Rating Company Insurance Company Claims Paying Ability Rating: AA−, AA, AA+, or AAA.

The first annuity period is April 29, 1992, to April 28, 1993. The contract shall include a growth factor of 4 percent compounded annually.

and

Judgments Act.

2. A lump sum payment to cover past and future pain and suffering, lost earnings and past unreimbursed expenditures that totals $410,391.33. This amount is apportioned as follows:

| | | |
|---|---|---|
| Past Pain and Suffering | $100,000 | |
| Future Pain and Suffering | 50,000 | |
| Total | | $150,000.00 |
| Lost Earnings | | 254,886.35 |
| Past Unreimbursed Expenses | | 5,504.98 |
| Total | | $410,391.33 |

To the extent set forth in this order, petitioners' June 11, 1993, motion under RCFC 59 is allowed in part. The Clerk is directed to enter the judgment in accordance with the foregoing.[5]

---

**5.** Section 12(g)(2) requires notice to a petitioner when the court fails to enter a judgment on a petition within 420 days, exclusive of suspension and remand periods. The April 28, 1992, order gave notice to petitioners pursuant to Section 12(g)(2), as amended. 26 Cl.Ct. at 287. In the absence of a petition for review pursuant to Section 12(f), the time for petitioners to make the election required by Section 21(a) will expire 90 days after entry of judgment pursuant to this order. Petitioners may submit the notice to continue or withdraw provided by Section 21(b) at anytime prior to 90 days after entry of judgment pursuant to this order.