**James J. EDGAR and Mary K. Edgar on behalf of Jamie K. Edgar, their daughter, Petitioners,**

v.

**SECRETARY OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–711V.

United States Court of Federal Claims.

Dec. 20, 1994.

Patrick J. Gilmartin, New York City, for petitioners.

David L. Terzian, Washington, DC, with whom was Asst. Atty. Gen., Frank W. Hunger, for respondent.

### ORDER

HARKINS, Senior Judge:

Petitioners seek review in the United States Court of Federal Claims under the National Childhood Vaccine Injury Compensation Program (the Program) of a special master's published decision, filed May 27, 1994, on petitioners' claim for an award of attorneys' fees and costs. In the award, the special master reduced the hourly rates from a range of $275 high–$159 low-to a range of $175 high–$150 low, and reduced the number of hours claimed by petitioners' lead attorney from 458.2 hours to 239.3 hours. This resulted in a reduction of the total claim for attorneys' fees from $138,146 to an award of $51,197. There was no change from the amount claimed for costs, $9,242.25, in the award.

The Program was established in 1986 as part of the National Childhood Vaccine Injury Act, Pub.L. No. 99–660, tit. III, § 311(a), 100 Stat. 3758. Amendments in 1987, 1988, 1989, 1990, 1991, and 1992, changed substantially procedures applicable to the functions of special masters, and review of decisions of special masters. Provisions governing the Program, as amended, are contained in 42 U.S.C. §§ 300aa–10 through 300aa–34 (1988 & Supp. V 1993).[1] For convenience, further reference to the Program in this order will

be to the relevant subsection of "42 U.S.C. § 300aa—_____."

The award of Program compensation in this case has had a protracted history. The petition was filed on August 1, 1990, and notice of final compliance with the compensation award was filed on December 14, 1993.

Petitioners received two types of compensation under the Program: (1) an award for future medical expenses to be provided through an annuity, and (2) a lump sum payment to compensate for past and future pain and suffering, lost earnings, and past unreimbursed expenditures. The award for future medical expenses is an annual amount, $172,526.06, to be adjusted by a growth factor of 4 percent compounded annually. The lump sum payment for pain and suffering, lost earnings, and unreimbursed expenses was $410,391.33.

The Program benefits have been realized by petitioners. Final judgment was filed on September 22, 1993; on November 4, 1993, the United States Treasury issued its check in payment of the lump sum portion of the judgment; and the guardian for the annuity for future medical expenses was appointed on December 3, 1993.

Notwithstanding respondent's concession on January 3, 1991, of entitlement, proceedings on the award of benefits under the Program have involved a review in this court of the special master's November 24, 1991, unpublished decision, reported in 26 Cl.Ct. 286 (1992); petitioner's appeal to Federal Circuit Court of Appeals, reported in 989 F.2d 473 (Fed.Cir.1993); final judgment on June 3, 1993, after remand; and petitioners' motion to amend that judgment, reported in 29 Fed.Cl. 339 (1993).

The special master's May 27, 1994, attorneys' fee decision was made after consideration of petitioners' application for attorneys' fees and disbursements, respondent's objections to that application, and petitioners' reply to respondent's objections. The special master found that petitioner had not provided sufficient relevant objective information

---

1. The name change on Oct. 29, 1992, from the United States Claims Court to the United States Court of Federal Claims, Title IX, Section 902, of

the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992), did not have legal consequence in the Program.

from which to determine a reasonable hourly rate for attorneys' fees. The special master also found that petitioners failed to support the hours claimed. Petitioners' "broad descriptive categories" did not document the hours spent in a way that would allow intelligent determination of the reasonableness of the hours claimed. The special master's description of the deficiencies in petitioners' request for attorneys' fees and costs is accurate.

The special master overcame the deficiencies in petitioners' information by looking to other sources of evidence. With respect to the hourly rate, a comparison was made between attorney performance in this case with the rates and performance of other attorneys in the Program, of similar quality and experience, who practiced in similar geographic areas. With respect to hours expended, the special master conducted an independent review focused on other cases known to involve either significant legal issues, or which were simply long and hard fought, and came to the conclusion that petitioners simply had spent excessive time on this case.

■ Award of attorneys' fees and costs is part of the Program, and the special master's decision is an exercise of discretion. Section 15(e)(1). The discretion to award attorneys' fees and costs can be exercised only in cases where it can be determined that the petitioner brought the case in good faith, and that the basis for the claim was reasonable. Where an application for attorneys' fees is deficient because it lacks necessary information, the special master or the court has the discretion to deny any award for lack of an adequate showing of validity.

■ The special master's attorneys' fees decision is subject to the Program's review standards. *Munn v. Secretary of DHHS*, 28 Fed.Cl. 490, 492–93 (1993); *Perreira v. Secretary of Dep't of Health and Human Services*, 27 Fed.Cl. 29, 31–32 (1992), *aff'd*, 33 F.3d 1375 (Fed.Cir.1994). An award of attorneys' fees is determined on the facts of each case. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983). Entitlement to attorneys' fees and costs involves analysis of interrelated statuto-

ry provisions. The issue presented is a mixed question of fact and law.

Review of a special master's decision in the Court of Federal Claims is of a very limited nature. Findings of fact and conclusions of law are reviewed in this court under the same standard. The standard of review for both conclusions of law and for findings of fact is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Section 12(e)(2)(B).

■ The Program is unique in the Judicial Branch; it operates under special procedures. *See Munn v. Secretary of DHHS*, 970 F.2d 863, 868–69 (Fed.Cir.1992). The Program standard of review requires recognition be given to the special master's expertise in the development of the procedures in this novel Program. A decision on issues of law applicable to the Program should be overturned only when error is unmistakably clear. *Klahn v. Secretary of DHHS*, 31 Fed. Cl. 382, 385 (1994).

Because of the no-fault nature of the Program, its simplified procedures, and its elimination of the need to prove fault or causation in every case, legal fees and costs in the Program were not expected to be high. The legislative history indicates an assumption that legal costs "may be as much as $15,000 per case in the compensation Program." H.R.Rep. No. 908, 99th Cong., 2d Sess. 36 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 6287, 6377–78.

■ The special master used the lodestar method to determine reasonable attorneys' fees and costs. The lodestar is the product of the reasonable number of hours expended by counsel times a reasonable hourly rate. What is "reasonable" depends on the facts of each case. *Hensley,* 461 U.S. at 429, 103 S.Ct. at 1937 (discussing reasonable attorneys' fees under the Civil Rights Act, 42 U.S.C. § 1988). The lodestar may be adjusted in certain circumstances. *Blanchard v. Bergeron,* 489 U.S. 87, 94–95, 109 S.Ct. 939, 944–45, 103 L.Ed.2d 67 (1989). The lodestar is an objective justification for an award of attorneys' fees. *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939. The objective base

may be adjusted to reflect more subjective factors. *Id.* at 434, 103 S.Ct. at 1939.

There is no exact formula or method for the special master to use to decide what a reasonable hourly rate is or how many hours should be allowed. In the analysis of reasonable hourly rates for this case, the special master considered the size of petitioners' law firm and the experience of its practitioners, the complexity of the issues, and the firm's location in New York City. The special master determined hourly rates for petitioners that were comparable to awards made to experienced litigators working in high cost metropolitan areas: Puerto Rico; Minneapolis, Minnesota; Chicago, Illinois; Boston, Massachusetts; and Washington, D.C. The special master's analysis of hours expended involved a review of seven complicated cases in the Program.

■ The award of $175 per hour was a correct application of the lodestar method. The goal of the Program is to attract competent counsel who can effectively litigate damage awards for individuals injured as a result of vaccinations. While the fees must be ample to achieve such a goal, the fees that are awarded under government programs are not meant to duplicate the fees the attorney would normally receive for non-program cases. *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984). "Petitioners are not given a blank check to incur expenses...." *Perreira,* 27 Fed.Cl. at 34.

The special master's total award was for 300 hours of time (239.3 hours for the lead attorney, and 60.7 hours for associates). This was 58% of the total hours requested. Even with this reduction, the decision resulted in petitioners being compensated for more time than in any Program case known to the court. The special master's attorneys' fee decision, notwithstanding the inadequacy of petitioners' application, was within the scope of discretion and in accord with law as reflected in precedent.

The Federal Circuit, in *Saxton v. Secretary of DHHS,* 3 F.3d 1517 (Fed.Cir.1993), affirmed that the determination of the amount of reasonable attorneys' fees is within the special master's discretion, that trial courts routinely use their prior experience to reduce hourly rates and number of hours claimed in attorney fee requests, and that Program special masters also are entitled to use their prior experience in reviewing fee applications. 3 F.3d at 1521–22.

On the basis of the record in this case, and on the foregoing discussion, petitioners have not shown that the special masters findings of fact and conclusions of law are arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law. Accordingly, the special master's findings of fact and conclusions of law are upheld and the attorney fee decision is sustained. The Clerk is directed to enter judgment in accordance with the decision of the special master.