**NOVID COMPANY LTD.**

v.

**The UNITED STATES.**

**No. 205–74.**

United States Court of Claims.

May 12, 1976.

Stephen N. Abrams, Rockville, Md., for plaintiff. Herman M. Braude, Washington, D. C., attorney of record.

James F. Merow, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, Washington, D. C., for defendant.

Before SKELTON, KASHIWA and BEN-NETT, Judges.

BENNETT, Judge.

This Government contract case comes before us on defendant's motion for summary judgment filed September 26, 1975, and the opposition thereto. Plaintiff on February 20, 1964, entered into a contract with defendant, acting through the Army Corps of Engineers. Contract No. DA–92–144–Eng–188 was executed on standard form 23 and provided that the contractor would construct certain housing in Iran for use by the Imperial Iranian Gendarmerie, at an agreed price payable in Iranian currency, equal to about $900,000. The contract contained a modified disputes clause providing for an appeal of a contracting officer's finding of fact to a unit of the Iranian Government— "Head of Plan Organization, Government of Iran" (HPO).

This construction contract had been authorized by two "country-to-country" agreements between the United States and Iran dated April 11 and April 27, 1963, which provided, *inter alia,* that funds supplied to the Iranian Government by the United States for construction financing would be deposited in a separate account of the Corps of Engineers in the Foreign Trade Bank of Iran. Article X of both country-to-country agreements specified that payments under the contract were to be limited to this special account:

> * * * In no event will the Corps of Engineers take any action which will require funds exceeding those made available, which include contract price plus a contingency reserve * * *. The Corps of Engineers will have no authority to otherwise change the plans and specifications.

The parties tell us that these funds were the proceeds of sales of American commodities in Iran, which proceeds were being loaned back to the Iranian Government under the terms of the Agricultural Trade Development and Assistance Act of 1954, § 104(g), 68 Stat. 456. This statute specifically permits the use of foreign currency accounts "[t]o promote multilateral trade * * * and other economic development * * * by loans" to foreign countries. 7 U.S.C. § 1704(f) (1970).

Performance of the work was completed and accepted in due course, whereupon plaintiff through Iranian counsel asserted several claims for increase against the contracting officer. The contracting officer entered his decision on April 11, 1968, allowing a single upward price modification of $5,640. On May 5, 1968, plaintiff gave its notice of appeal to HPO, which entered its decision on August 10, 1968, allowing some additional 1,890,000 rials of the 28,400,000 claimed. On November 12, 1971, the then contracting officer (a successor) wrote to plaintiff closing out the contract, stating that HPO had advised "that they have settled with you the claims on the subject contract." A petition was filed in this court on June 11, 1974.

Defendant raises two questions for our consideration. First, we are asked whether this court has subject matter jurisdiction under 28 U.S.C. § 1491 (1970) where the funding source of the contract sued upon was money loaned to the Iranian Government by the United States but not directly out of appropriated funds. Alternatively, the Government would have us decide whether the decision of the HPO (the appellate entity designated in the contract to review contracting officer findings of fact) is entitled to finality in this court, or is subject to review under the terms of the Wunderlich Act, 68 Stat. 81, 41 U.S.C. §§ 321, 322 (1970).

We turn now to defendant's contention that we are without subject matter jurisdiction, since the contract in no event could obligate appropriated funds. This issue is dispositive of the claim. Defendant relies on *Kyer v. United States,* 369 F.2d 714, 177 Ct.Cl. 747 (1966), *cert. denied,* 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967).

In *Kyer* the court concluded that it was without jurisdiction of a claim based on a contract funded by nonappropriated funds. In dismissing the petition the court said:

The jurisdiction of this court under the Tucker Act [footnote omitted] encompasses "any claim against the United States: * * * founded * * * upon any express or implied contract with the United States; * * *." While the terms of this statute are broad, its words must be read in conjunction with and must be regarded as limited by another statute which provides that our judgments are paid only from appropriated funds. [Ftnt. omitted; 28 U.S.C. § 2517 (1964).] Thus, to remain within the framework of our jurisdiction, it is essential that the contract sued on be one which could have been satisfied out of appropriated funds. It is not enough to say, as plaintiff does, that his contract was one to which the United States was a party. To be actionable *in this court,* that contract must be one which, in the contemplation of Congress, could obligate public monies. [Citation omitted.] If Congress has indicated that public funds shall not be involved, we cannot grant the relief requested. * * *. [369 F.2d at 717–18, 177 Ct.Cl. at 751–52; emphasis in text.]

Examining the governing legislation the court could find "no basis for inferring that public funds might be used to pay the commission which plaintiff was allegedly promised." 369 F.2d at 718, 177 Ct.Cl. at 752. While noting the apparent harshness of the rule, the court felt constrained to dismiss the petition.

Subsequent decisions have developed the law applicable to contracts of nonappropriated-fund activities. In *Butz Eng. Corp. v. United States,* 204 Ct.Cl. 561, 499 F.2d 619 (1974), we held that Congress did not intend to insulate appropriated funds from the liabilities of the Postal Service. In *Breitbeck v. United States,* 205 Ct.Cl. 208, 500 F.2d

556 (1974), we decided that although the St. Lawrence Seaway Development Corporation was eventually to become self-financing, Congress intended to carry the project out of appropriated funds. Thus, the court declined to dismiss plaintiffs' claims for back pay.

More recently, we dismissed a petition on the nonappropriated-fund-activity ground in *McCloskey & Co. v. United States,* Ct.Cl., 530 F.2d 374 (1976). There plaintiff sought to maintain a Wunderlich Act suit in this court, taking exception to the decision of the District of Columbia Contract Appeals Board. The contract in dispute was for the construction of what is now known as Robert F. Kennedy Stadium in the District of Columbia. Funding for this project was to come from a bond issue of the D.C. Armory Board, and the authorizing legislation as we construed it limited payment of claims to funds so raised. The court looked to *Kyer, supra,* as controlling authority in dismissing the petition. In *Hughes Aircraft Co. v. United States,* Ct.Cl., 534 F.2d 889 (1976), we declined to dismiss a patent infringement suit, finding that although the United States was to be reimbursed by the United Kingdom for all amounts expended in development of the Skynet II satellite program, regular, appropriated funds were intended by Congress to be used pending such reimbursement for the procurement of material and services. At 908–909. In that case we could "find no indication that Congress 'wished to cut the Skynet II program entirely loose from the Treasury or from appropriated funds.'" At 912. In the instant case, however, Congress unambiguously has manifested its intent that costs such as those under the Iranian construction contract are not reimbursable out of general appropriations.

Turning to the instant case, defendant emphasizes the fact that the funds used to construct this Iranian housing were the property of the Iranian Government, and not of the United States. The parties agree that these funds were the proceeds of a loan from the United States to Iran. In defendant's view this fact alone requires dismissal under *Kyer.*

Plaintiff responds by saying that we must look beyond the form of the transaction to its substance. It emphasizes the following principal contentions: (1) Each of the intended uses of foreign currency set down in the authorizing legislation are of a sort "normally supported by appropriated funds." (2) The foreign currency accounts themselves, which are loaned to Iran "represent the proceeds from the sale of Government-owned commodities acquired by payment of appropriated funds." (3) The United States Agency for International Development (USAID), a signatory to the country-to-country agreements, was an appropriated-fund activity. (4) The Army Corps of Engineers, an appropriated-fund activity, was charged with overall administration of the contract, including virtually exclusive custody and control of the funds. (5) Authority was given to the Corps of Engineers, an appropriated-fund activity, to award the contract. (6) Plaintiff places principal emphasis on its contention that in the event of a default by the Iranian Government, any payments out of the loan proceeds in the control of the Corps of Engineers would "effectively represent payment by the United States from public moneys." (7) Plaintiff seeks to distinguish *Kyer* on the ground that, in the case at bar, Congress has not indicated any prohibition against involvement of public funds. Plaintiff finds such a prohibition in *Kyer* in two respects: (a) The contracting committee was not the type of agency which normally contracted on behalf of the United States, and (b) funding derived exclusively from committee constituents, not appropriated funds. Plaintiff summarizes its position as follows:

> * * * Plaintiff submits that where a contract is entered into by the United States through an appropriated fund instrumentality, utilizing funds derived from the sale of United States-owned commodities originally acquired with appropriated funds, sufficient incidence of involvement of appropriated funds are

8

demonstrated to satisfy this Court's jurisdiction * * *.

We think that plaintiff is glossing over the test set down in *Kyer v. United States, supra.* The question we must decide is whether "the contract sued on * * * [is] one which could have been *satisfied* out of appropriated funds"—"one which, in the contemplation of Congress, could obligate public monies." (Emphasis supplied.) 369 F.2d at 718, 177 Ct.Cl. at 751. This is not such a contract. Article X of both country-to-country agreements strictly limited contract payments to the Iranian Government loan account established in the Foreign Trade Bank of Iran. Moreover, the enabling legislation, 7 U.S.C. § 1704(f) (1970), states that the funds provided are to take the form of a loan. The statute does not authorize the expenditure of appropriated funds. It is evident that Congress did not intend to authorize a pledge of the entire credit of the United States. Rather, it sought to limit liability to a definite fund of foreign currency derived from sale of goods in foreign commerce and loaned to a foreign government. Appropriated funds were wholly insulated from liability. In these circumstances the conclusion is legally irresistible that the contract was not "one which, in the contemplation of Congress, could obligate public monies." *Kyer, supra.* The factors cited by plaintiff are irrelevant. We do not think that Congress has invested us with jurisdiction to entertain this suit. In light of this holding, it is unnecessary to reach other issues raised by the parties. Defendant's motion for summary judgment is allowed. The petition is dismissed.