**FORD, POWELL & CARSON, INC.**

v.

**The UNITED STATES.**

No. 386–82C.

United States Claims Court.

Dec. 29, 1983.

John F. Myers, Washington, D.C., for plaintiff; Kahl K. Spriggs, Washington, D.C., of counsel.

Linwood C. Wright, Jr., Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant; Bruce Overton, Office of Gen. Counsel, Dept. of the Treasury, Washington, D.C., of counsel.

## OPINION

### ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

This is an action to recover $188,415.19, plus interest, allegedly due Ford, Powell & Carson, Inc. ("the plaintiff") in accordance with the provisions of a contract between the plaintiff and the United States.

The defendant has filed a motion for summary judgment, asserting that, in view of 28 U.S.C. § 2517(a), as amended by section 139(k)(1) of the Federal Courts Improvement Act of 1982 (Pub.L. 97–164, 96 Stat. 25, 43), this court lacks subject matter jurisdiction to hear the present action.

The statutory provision relied on by the defendant states as follows:

(a) Every final judgment rendered by the Claims Court against the United States shall be paid out of any general appropriations therefor, on presentation to the General Accounting Office of a certification of the judgment by the clerk and chief judge of the court.

For the reasons stated subsequently in the opinion, it is concluded that the court has the necessary jurisdiction, and, accordingly, that the defendant's motion for summary judgment should be denied.

### The Facts

On February 13, 1975, the United States and the Kingdom of Saudi Arabia signed a Technical Cooperation Agreement to provide a basis for the furnishing of technical and advisory services by the United States to Saudi Arabia in the areas of economics, technology, and industry. This agreement established the foundation for further agreements in the event Saudi Arabia requested the United States to provide services for future projects.

Article 5(a) of the Technical Cooperation Agreement declares that, in the event services by the United States are contracted for, the Government of Saudi Arabia will establish a dollar trust account in the United States Treasury providing enough funds to cover all expenses resulting from the project, and that the United States will then draw upon this trust account to cover its costs in providing the services. Article 5(d) of the Technical Cooperation Agreement makes it clear that the United States will not be obligated to provide any services if the trust account is not sufficient to cover the cost.

Under the authority of the Technical Cooperation Agreement, a Project Agreement was signed on May 3, 1977, between the United States (acting through the Treasury Department) and Saudi Arabia (acting through the Ministry of Finance and National Economy) in order to establish an information center in Riyadh, Saudi Arabia. The Technical Cooperation Agreement was incorporated by reference in the Project Agreement. The Government of Saudi Arabia agreed to deposit $4,669,410 in the United States Treasury to cover the esti-

mated budget of the project for the first year.

The Technical Cooperation Agreement and the Project Agreement were established pursuant to section 607 of the Foreign Assistance Act of 1961 (22 U.S.C. § 2357 (1982)). Subsection (a) of this section authorizes agencies of the United States (such as the Treasury Department) to provide "services * * * on an advance-of-funds or reimbursement basis * * * to friendly countries * * *." Subsection (b) of the section provides that when a government agency provides services in accordance with the legislation, it may contract with individuals "for personal service abroad or in the United States to perform such services * * *."

On October 28, 1977, a contracting officer of the Treasury Department, acting on behalf of the United States, awarded a cost-plus-fixed-fee contract to the plaintiff. The services provided for in the contract were solicited by the Treasury Department pursuant to the Technical Cooperation Agreement and the Project Agreement. The contract provided that the plaintiff would use its architect and engineering services to develop the design of the information center in Riyadh previously mentioned. The plaintiff was also to prepare specifications for construction of the information center. (This contract will usually be referred hereafter as "the contract.")

The contract provided that payment would be made by the Treasury Department from the Saudi Arabian Technical Agreement Trust Account. The funds in this account were deposited annually by the Government of Saudi Arabia pursuant to section 5 of the Technical Cooperation Agreement.

The Saudi Arabian Technical Agreement Trust Account was subsequently charged with the amounts paid to the plaintiff pursuant to the contract.

### Nature of Litigation

The plaintiff's action asserts two claims.

The first claim involves the contracting officer's decision not to advance payment to the plaintiff for the cost of certain change orders. The decision was based on an administrative determination that these change orders were necessitated by the plaintiff's inaccurate designs, drawings, and specifications.

The second claim concerns the contracting officer's disallowance of payment for claimed overhead expenses. The contracting officer determined that the subject of overhead had been incorporated in the contract through prior negotiations and, therefore, additional overhead claims could not be approved.

After the plaintiff filed its complaint[1] on August 4, 1982, the defendant answered on December 17, 1982, and then moved for summary judgment on April 6, 1983.

The defendant asserts in the motion that this court lacks subject matter jurisdiction because the contract involves nonappropriated fund activities that run afoul of the command in 28 U.S.C. § 2517(a) that "* * * [e]very final judgment rendered by the Claims Court against the United States shall be paid out of any general appropriations therefor * * *."

The plaintiff takes issue with the argument that this court's jurisdictional grant under the Tucker Act (28 U.S.C. § 1491(a)(1), as amended by sec. 133(a), Pub.L. 97–164, 96 Stat. 25, 39–40) is limited in any way by section 2517. In the alternative, the plaintiff asserts that, even if jurisdiction can be divested by section 2517, its provisions are not applicable to the facts of this case.

### Discussion

■ The plaintiff's first argument, that 28 U.S.C. § 2517 is merely a procedural matter which does not go to this court's subject matter jurisdiction, must be rejected. It is well settled that the directive in 28 U.S.C. § 2517(a)— "[e]very final judgment rendered by the Claims Court against the United States shall be paid out of any

1. Filed as a petition in this court's predecessor, the United States Court of Claims.

general appropriations therefor"—serves as a limitation on the court's general powers under the Tucker Act. *See South Louisiana Grain Services, Inc. v. United States,* 1 Cl.Ct. 281, 287 (1982); *L'Enfant Plaza Properties, Inc. v. United States,* 229 Ct.Cl. 278, 279, 668 F.2d 1211, 1212 (1982); *Kyer v. United States,* 177 Ct.Cl. 747, 751, 369 F.2d 714, 718 (1966), *cert. denied,* 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967). Thus, it is not enough that the plaintiff has a contract with the United States, thereby satisfying the terms of 28 U.S.C. § 1491. Section 1491 must be read in conjunction with section 2517.

This leaves for consideration the question whether 28 U.S.C. § 2517 bars resolution of the present action by the court.

A leading case on the interaction between the Tucker Act and 28 U.S.C. § 2517 is *L'Enfant Plaza Properties, Inc. v. United States, supra.* In that case, the Office of the Comptroller of the Currency, an agency of the Treasury Department, rented office space from the complainant. The complainant alleged a deficiency in the defendant's rental payments. The Government contended that the Office of the Comptroller was a nonappropriated fund agency because: it was financially self-supporting; it had not received appropriated funds since 1947; and any judgment against the United States could not be paid out of appropriated funds. Therefore, according to the Government, 28 U.S.C. § 2517 divested the Court of Claims of jurisdiction. The Court of Claims rejected the Government's contention and denied the motion to dismiss.

The Court of Claims in *L'Enfant Plaza Properties* held (229 Ct.Cl. at 279–80, 668 F.2d at 1212) that although jurisdiction under the Tucker Act is limited by 28 U.S.C. § 2517, the limitation becomes operative with respect to activities of government agencies only when there is "a clear expression by Congress that the agency was to be separated from general federal revenues, * * * a firm indication by Congress that it intended to absolve the appropriated funds of the United States from liability for acts" of the agency. *See also South Louisiana*

*Grain Services, supra,* 1 Cl.Ct. at 287; *Breitbeck v. United States,* 205 Ct.Cl. 208, 210–13, 500 F.2d 556, 559 (1974).

The Foreign Assistance Act of 1961 does not indicate, clearly or otherwise, that government agencies conducting programs under that legislation must do so without receiving appropriations from Congress for the support of such programs. On the contrary, section 607 of the Foreign Assistance Act of 1961, now codified as 22 U.S.C. § 2357 (1982), provides in pertinent part as follows:

(a) Whenever the President determines it to be consistent with and in furtherance of the purposes of subchapter I of this chapter and within the limitations of this chapter, any agency of the United States Government is authorized to furnish services and commodities on an advance-of-funds or reimbursement basis to friendly countries, international organizations, the American Red Cross, and voluntary nonprofit relief agencies registered with and approved by the Agency for International Development * * *. Such advances or reimbursements may be credited to the currently applicable appropriation, account, or fund of the agency concerned and shall be available for the purposes for which such appropriation, account, or fund is authorized to be used * * *.

The quoted language clearly indicates that programs under the Foreign Assistance Act of 1961 may be financed by government agencies either with available appropriated funds, if administratively desirable, or with funds provided by the recipients of the services. Thus, there is certainly no "clear expression by Congress" that an agency conducting a foreign assistance program is "to be separated from general federal revenues." *L'Enfant Plaza Properties, supra,* 229 Ct.Cl. at 279–80, 668 F.2d at 1212.

Furthermore, it is irrelevant in this case that the Treasury Department did not use appropriated funds. In *McCarthy v. United States,* 229 Ct.Cl. 361, 370, 670 F.2d 996, 1002 (1982), the Court of Claims said that "* * * the nonappropriated funds exclusion

is limited to instances when, by law, appropriated funds not only are not used to fund the agency, but could not be." The Court of Claims also stated in *L'Enfant Plaza Properties, supra,* 229 Ct.Cl. at 280, 668 F.2d at 1212), that to sustain jurisdiction against an attack based on 28 U.S.C. § 2517, "the requirement is not that appropriated funds have been used for the activity but that under the agency's authorizing legislation Congress could appropriate funds if necessary."

At the oral argument on the motion for summary judgment, defendant's counsel asserted that the issue at bar was controlled by *Novid Co. Ltd. v. United States,* 210 Ct.Cl. 1, 535 F.2d 5 (1976). In that case, the claimant signed a contract with a government agency, agreeing to construct housing in Iran at a set price. The contract was authorized by two "country-to-country" agreements between the United States and Iran. Those agreements were formed pursuant to the Agricultural Trade Development and Assistance Act of 1954 (7 U.S.C. § 1704(f) (1982)). Contract payments to the contractor were limited to a special account consisting of funds provided by Iran. After a dispute as to proper payment, the contractor instituted a suit in the Court of Claims. The Government moved for summary judgment on the ground that the court lacked subject matter jurisdiction because the contract could not obligate appropriated funds.

In granting the defendant's motion and dismissing the petition, the Court of Claims in *Novid Co.* emphasized (210 Ct.Cl. at 6–7, 535 F.2d at 8) that the contract limited payments to funds in the special account, so that any judgment could not have been satisfied out of appropriated funds.

■ Cases subsequent to *Novid Co.* have made it clear that the controlling factor in deciding whether 28 U.S.C. § 2517 deprives the court of jurisdiction over claims against the Government is the enabling legislation pursuant to which government agencies conduct programs and activities. The test is whether the enabling legislation makes it clear that appropriated funds will not be made available for the support of the programs and activities authorized by the legislation. If so, section 2517 becomes operative and deprives the court of jurisdiction over claims arising under the legislation. On the other hand, if the enabling legislation permits the use of appropriated funds in connection with authorized programs or activities, the fact that the provisions of a particular contract entered into under the legislation may restrict payments to nonappropriated funds does not bring section 2517 into play so as to deprive the court of jurisdiction over claims arising under the contract. *See South Louisiana Grain Services, Inc. v. United States, supra,* 1 Cl.Ct. at 287; *McCarthy v. United States, supra,* 229 Ct.Cl. at 370, 670 F.2d at 1002; *L'Enfant Plaza Properties, Inc. v. United States, supra,* 229 Ct.Cl. at 280, 668 F.2d at 1212; *Convery v. United States,* 220 Ct.Cl. 106, 111–12, 597 F.2d 727, 729–30 (1979). Thus, the reliance by the Court of Claims in *Novid Co.* on the contract provisions that were involved in that case does not now carry great weight.

The following argument, made by the defendant in the brief supporting its motion for summary judgment, requires comment: * * * Extending the Court's jurisdiction to this case by virtue of section 607 alone would be tantamount to requiring United States taxpayers to pay for a foreign construction project that was undertaken exclusively for the benefit of a foreign sovereign and for which there was an express agreement and mutual desire that Saudi funds alone were to be obligated.

■ The defendant's statement quoted in the preceding paragraph is inaccurate. It must be stressed that any recovery by the plaintiff will be limited by the plain language of the contract to what the Saudi Arabian Government has contributed to the trust account. This prevents the cost of any judgment from falling on the taxpayers of the United States through the use of general appropriations to pay the judgment. *Cf. Corbino v. United States,* 203 Ct.Cl. 278, 283, 488 F.2d 1008, 1010 (1973).

*Conclusion*

For the reasons stated in the discussion, the court concludes that it has subject matter jurisdiction over the claims asserted in the complaint, and is not deprived of such jurisdiction by the provisions of 28 U.S.C. § 2517.

The defendant's motion for summary judgment is therefore denied.

IT IS SO ORDERED.