**WOLVERINE SUPPLY, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 21–89C.**

United States Claims Court.

June 13, 1989.

---

Duncan A. Stuart, Anchorage, Alaska, attorney of record for plaintiff.

Bryan R. O'Boyle, Washington, D.C., for defendant.

## OPINION

LYDON, Senior Judge:

Defendant has moved to dismiss plaintiff's complaint in this contract case on the ground that the court has no jurisdiction over plaintiff's claim since the contract upon which plaintiff's claim rests was between plaintiff and a nonappropriated fund instrumentality (NAFI) of the United States Government. Plaintiff opposes defendant's motion. Upon consideration of the submissions of the parties, oral argument having been waived by the parties, the court finds merit in defendant's motion.

### I.

On July 6, 1988, Detachment 1, 5000 Contracting Squadron, Eielson Air Force Base (EAFB), Alaska issued Contract No. F65503–88–C0017 to plaintiff for construction of an outdoor recreation pavilion at EAFB. The contract price was $239,815.

The contract under "Award" provided in Box 23 "Accounting And Appropriation Data" that funds for the contract were "Nonappropriated Funds ARA 480034." Box 27 under "Award" provided that payment under the contract was to be made by "NAF Financial Mgmt Branch, 343 MSSQ/SSF, Eielson, AFB, AK 99702–500." Contract clause 21, "Definitions", stated: ".... b. The abbreviation 'NAFI' means Nonappropriated Fund Instrumentality of the United States....b c. The term "contracting officer" means the person executing or responsible for administering this contract on behalf of the NAFI which is party hereto, or his or her successor or successors." Clause 24 of the contract, "Legal Status," read as follows: "The NAFI is an integral part of the Department of Defense and is an instrumentality of the United States Government. Therefore, NAFI contracts are United States Government contracts; however, they do not obligate appropriated funds of the United States."

Funding for the outdoor recreation pavilion at EAFB was approved by the Air Force Welfare Board on August 21, 1985, and nonappropriated funds in the Air Force's Central Welfare Fund were granted to the Eielson AFB Central Base Fund (CBF), a NAFI, for financing the contract on which plaintiff's claim rests.[1]

Plaintiff's contract contained two disputes clauses. The contract contained a section entitled "Clause Incorporated By Reference." Under this section, an April 1984 "Disputes" clause (Federal Acquisition Regulation (FAR) contract clause 52.-233–1) was incorporated into the contract by reference. This Disputes clause provided for an optional, instead of appealing to the Board of Contract Appeals, appeal to the United States Claims Court within

---

1. The Air Force Welfare Board managed a world-wide nonappropriated fund financial program in support of morale, welfare and recreation activities in the military community. This Board was established by Air Force Regulations (AFR) 176–1 (1986), deriving its authority from the Secretary of the Air Force and acting on behalf of the Chief of Staff of the United States Air Force. These regulations describe the CBF as "the NAFI that receives, administers, and disburses military welfare funds to assist in financing certain MWR [morale, welfare and recreation] programs at base level. Each base occupied by two or more organizational units is authorized one CBF." In October 1988, the CBFs were succeeded by Morale, Welfare, Recreation funds.

twelve months of the contracting officer's decision. This Disputes clause was not required to be included in the contract. The contract also contained a section entitled "Contract Clauses In Full Text." Under this section a December 1979 Disputes clause was set out in full text as clause "22" of the contract. This Disputes clause only provided for appeal by plaintiff to the Armed Services Board of Contract Appeals (ASBCA). It made no mention of any appeal right to the United States Claims Court. It should be noted that the inclusion of the December 1979 Disputes clause in the contract was mandated by AFR 176–9, ¶ 6–3b (1984).

On December 1, 1988, plaintiff submitted two claims to the contracting officer. In the first claim, plaintiff sought $17,500, contending it was forced to supply additional fill material over and above what was contemplated by the contract plans and specifications. The contracting officer denied this claim.[2] In the second claim, plaintiff sought $2,100, contending it was forced to provide plywood sheathing on the exterior walls of the project in order to bring the construction up to the requirements of the Uniform Building Code. Plaintiff maintained these materials, and the labor associated therewith, were not contemplated by the contract plans and specifications. The contracting officer also denied this claim.[3] The decision of the contracting officer was dated December 9, 1988. In his decision denying plaintiff's claims, the contracting officer advised plaintiff that it could appeal said decision to the ASBCA within ninety days, or to the United States Claims Court within one year. Plaintiff's complaint seeking recovery on the above two claims, by way of equitable adjustments, was filed in this court on January 17, 1989.

## II.

Defendant's motion to dismiss rests on the established principle that the jurisdictional grant given this court by the Tucker Act, 28 U.S.C. § 1491 (1982), must be paid out of appropriated funds. 28 U.S.C. § 2517 (1982); *L'Enfant Plaza Properties v. United States*, 229 Ct.Cl. 278, 279, 668 F.2d 1211, 1212 (1982). Accordingly, jurisdiction over the claims presented in the case at bar can only be exercised if appropriated funds are, or could be, obligated.

It is clear in this case that appropriated funds were not obligated relative to the contract from which the claims sued upon emanated. The contract executed by the parties specifically so provided. Plaintiff does not seriously argue to the contrary. Instead, plaintiff advances three arguments in support of its opposition to defendant's motion to dismiss. First, plaintiff suggests that Congress, when it amended the Tucker Act in 1970, (84 Stat. 449), only intended to exclude from the court's jurisdiction those claims arising out of contracts with nonappropriated fund entities that could not reimburse the government. Since, according to plaintiff, the NAFI in this case, the Eielson AFB CBF, has (or had) more than sufficient funds available to satisfy plaintiff's $19,600 claim by way of reimbursement to the Federal Treasury, there is no jurisdictional impediment to the court's consideration of the claims.[4] This

---

**2.** Plaintiff ostensibly felt it only had to supply "structural" fill whereas the contracting officer held plaintiff, under the contract, had to supply "structural" fill and "common" fill.

**3.** The contracting officer agreed that the plywood in question was not called for by the contract documents; that plaintiff was so advised the day after the matter was called to the contracting officer's attention; but that plaintiff nonetheless proceeded to utilize plywood and thus did so at its own risk and cost.

**4.** Plaintiff concedes there is no case law supportive of this suggestion. Plaintiff has taken a statement, out of context it might be added, from the legislative history of the 1970 amend-

ment to the Tucker Act relative to the retention of sovereign immunity as to all but certain designated nonappropriated fund instrumentalities as supportive of its suggestion. One of the several reasons given for not waiving sovereign immunity for all nonappropriated fund entities in 1970 was the statement, relied on by plaintiff, "not every non-appropriated fund activity has sufficient assets to reimburse the United States, the cost of the judgment in some cases would be imposed on the taxpayer—a result which is inconsistent with the very concept of non-appropriated fund activities." H.R.Rep. No. 933, 91st Cong.2d Sess. 2, *reprinted in* 1970 U.S.CODE CONG. & ADMIN.NEWS 2477, 2479. An analysis of the complete legislative history of the 1970

reasoning overlooks the fact that the court, as an initial action, would have to render a judgment, payable under 28 U.S.C. § 2517 to a NAFI.

Second, plaintiff argues that the inclusion of the FAR Standard Disputes Clause in the contract at issue waived sovereign immunity relative to suit in this court against the NAFI, Eielson AFB CBF.[5] Attendant to this argument, plaintiff asserts that the Government is estopped from raising its jurisdictional defense because the contracting officer included the FAR Standard Disputes Clause in the contract and thus conferred jurisdiction over the NAFI claims asserted herein.

In his decisional letter of December 9, 1988, the contracting officer utilized language from the AFR Standard Disputes Clause which ostensibly had been incorporated into the contract as part of a standardized listing of five page of clauses available for incorporation by reference into the contract. Clauses marked with an asterisk were required by DOD FAR Supplement. The FAR Disputes Clause (52.-233–1) relied on by the contracting officer was not marked with an asterisk and thus was not required to be included in the contract. The FAR Disputes Clause contained the language utilized by the contracting officer in advising plaintiff in his decisional letter of his right to "bring an action directly in the U.S. Claims Court within 12 months of the date you received this decision." These facts are the basis

for plaintiff's contention that the contracting officer waived sovereign immunity when he inserted the FAR Disputes Clause language into the decisional letter he sent plaintiff.

As indicated previously, the regulations governing NAFI contracts mandated the inclusion of a disputes clause in plaintiff's contract which only provided for an appeal to the ASBCA and did not provide for any appeal to the United States Claims Court. AFR 176–9, ¶ 6–3b. As to inclusion of mandated clauses in a government contract *see generally G.L. Christian and Assocs. v. United States*, 160 Ct.Cl. 1, 12, 312 F.2d 418, 424, *cert. denied*, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314 (1963). The NAFIs are governed by their own separate rules or regulations. *Id.* 160 Ct.Cl. at 14, 312 F.2d at 425. Accordingly, the contracting officer was mandated to utilize the December 1979 Disputes clause which only provided for appeal to the ASBCA, a recognition of the fact that the Claims Court has no jurisdiction over NAFIs such as the Eielson AFB CBF. The contracting officer's use of the FAR Disputes clause language in his decisional letter was unauthorized and erroneous under the circumstances.[6] Accordingly, resort to the wrong Disputes clause language, by the contracting officer cannot be deemed to waive sovereign immunity, nor can such a mistake serve as the basis for an estopped claim against the Government.[7]

amendment to 28 U.S.C. § 1491 makes it clear that Congress intended that sovereign immunity was to remain as to all nonappropriated fund instrumentalities except for military exchanges and this intent was not conditioned on whether the other NAFIs were able to reimburse the Federal Treasury. *See id.* H.R. 933; *see also Swiff–Train Co. v. United States*, 443 F.2d 1140, 1143 (5th Cir.1971).

5. The FAR Standard Disputes Clause, as indicated previously provides for direct access to this court, at the contractor's option, pursuant to the Contract Disputes Act, 41 U.S.C. 609(a) (1982). The Contract Disputes Act applies to any executive agency express or implied contract, including those of the nonappropriated fund activities described in 28 U.S.C. 1491(a). The nonappropriated fund activities mentioned in 28 U.S.C. 1491(a) are military exchanges. Since the Eielson AFB CBF is not a military

exchange it would appear that claims generated by the CBF are not covered by the Contract Disputes Act.

6. Plaintiff's reliance on the erroneous appeal language of the contracting officer's decisional letter is misplaced in any event. The presence of two disputes clauses in the contract which stated different appeal rights constitutes such an obvious inconsistency that the plaintiff was obligated to consult the contracting officer if he intended to "bridge the crevasse in his own favor," i.e., rely on the wrong Disputes clause for appeal purposes. *See Beacon Constr. Co. v. United States*, 161 Ct.Cl. 1, 7, 314 F.2d 501, 504 (1963).

7. Plaintiff argues that the Government should be equitably estopped from asserting sovereign immunity as a defense to plaintiff's claims since the contract included a Disputes clause giving

Finally, plaintiff argues that this court has jurisdiction over the instant case even though the contract involved nonappropriated funds since the test for jurisdiction is whether appropriated funds could have been used, not whether they were actually used. It is conceded in this case that appropriated funds were not used in performance of the contract. The court concludes that appropriated funds could not have been used under the contract as executed by plaintiff and the Eielson CBF.

Under controlling statutes, 28 U.S.C. § 1491(a)(1) and 41 U.S.C. § 602(a), this court does not have jurisdiction over claims emanating from nonappropriated fund contracts. *L'Enfant Plaza, supra,* and cases cited therein. The test, in cases such as this, is whether under the "agency's authorizing legislation Congress could appropriate funds if necessary" relative to the contract in question. *Id.* 229 Ct.Cl. at 280, 668 F.2d at 1212. The intent of Congress in this regard is paramount.

The Tucker Act, 28 U.S.C. § 1491(a)(1), provides in pertinent part:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, ... For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

The Contract Disputes Act, 41 U.S.C. § 602(a) provides, in pertinent part: "Un-

less otherwise specifically provided herein, this chapter applies to any express or implied contract (including those of the nonappropriated fund activities described in section 1346 and 1491 or Title 38) entered into by an executive agency for—* * *"

The legislative history of the 1970 amendments to 28 U.S.C. § 1491, inter alia, makes it crystal clear that Congress waived sovereign immunity only as to those specifically designated nonappropriated fund instrumentalities set forth in 28 U.S.C. § 1491(a)(1) *supra,* H.R.Rep. No. 933, 91st Cong.2d Sess. 2, *reprinted in* 1970 U.S.CODE CONG. & ADMIN.NEWS 3477, 3479; *Swiff–Train Co. v. United States, supra,* 443 F.2d at 1143. It is thus plain that the Eielson CBF, a NAFI, plaintiff's contracting party, was not, and is not included in the NAFI military exchanges set forth in 28 U.S.C. § 1491(a)(1) which Congress intended the withdrawal of sovereign immunity apply.

Plaintiff seeks support for its jurisdictional position in cases where certain financially self-sufficient agencies for whom Congress had not appropriated funds were found to be outside the pale of sovereign immunity because the court found that the agencies' authorizing legislation supported the view that Congress could, and presumably would, appropriate funds if necessary to said agencies. These cases are *L'Enfant Plaza, supra,* [legislation establishing the Office of the Comptroller of the Currency]; *Breitbeck v. United States,* 205 Ct.Cl. 208, 500 F.2d 556 (1979) [legislation establishing the Saint Lawrence Seaway Development Corporation]. *See also Ford, Powell & Carson, Inc. v. United States,* 4 Cl.Ct. 200 (1983) [Technical Cooperation Agreement between United States and Saudi Arabia and the Foreign Assistance Act

the Claims Court jurisdiction. The simple answer to plaintiff's argument is that the parties, jointly or individually cannot confer jurisdiction on this court by their actions, if such jurisdiction does not otherwise exist. *Gould, et al, v. Control Laser Corp.,* 866 F.2d 1391, 1393 (1989). The contracting officer had no authority to waive congressional limitations on this court's jurisdiction. *See Paul E. Lehman, Inc. v. United States,* 230 Ct.Cl. 11, 17, 673 F.2d 352, 356

(1982); *Hughes Air Craft Co. v. United States,* 209 Ct.Cl. 446, 463, 534 F.2d 889, 900 (1976). Nor can the Government be estopped to deny jurisdiction. *See Marshall N. Dana Constr. Co. v. United States,* 229 Ct.Cl. 862, 865 (1982); *Singleton v. United States,* 6 Cl.Ct. 156, 165 (1984). *cf. Emeco Indus., Inc. v. United States,* 202 Ct.Cl. 1006, 1014, 485 F.2d 652, 659 (1973), relied on by plaintiff (Government estopped from denying existence of contractual agreement.)

of 1961]. In the *Ford, Powell & Carson,* case, the court found that the contractual agreement was established pursuant to the Foreign Assistance Act of 1961 and the language of said Act indicated that programs under said Act may be financed by government agencies either with available appropriated funds or with nonappropriated funds. 4 Cl.Ct. at 203–04. The court in the *L'Enfant Plaza* and *Breitbeck* cases, found indications and manifestations in the legislation establishing these agencies that, while Congress wanted the agencies to be self-supporting, congressional appropriations would be available if needed. The test, enunciated in these cases, as to whether the curtain of sovereign immunity should be lifted, was whether Congress intended that the activity resulting in the claim was not to receive or be funded from appropriated funds. *L'Enfant Plaza,* 229 Ct.Cl. at 280, 668 F.2d at 1212; *Breitbeck,* 205 Ct.Cl. at 212–13, 500 F.2d at 558–59; *Ford, Powell & Carson,* 4 Cl.Ct. at 203–04. Applying this test to the facts in the case at bar demonstrates rather clearly that the activity resulting in the claims presented herein was not intended by Congress, or the regulations creating the activity, to receive or be funded from appropriated funds. Since this is so, the court cannot exercise jurisdiction over the claims presented.

The NAFI activity at issue is the Eielson AFB CBF. This activity, unlike the agencies in the *L'Enfant Plaza, Breitbeck,* and *Ford, Powell & Carson* cases was not established by statute. The CBF was established by regulation. It was funded from sources other than congressional appropriations, and its funds were separate and apart from funds of the Treasury of the United States. Further, the contract, upon which the claims presented rest, specifically provided that nonappropriated monies funded the contract. There are no indica-

tions or manifestations in the regulations establishing the Eielson AFB CBF or in the contract Eielson AFB CBF entered into with plaintiff that suggest or infer that appropriated funds would be available if needed. Since the regulations and the contract specifically limited expenditures to nonappropriated funds, the claims herein are beyond the jurisdiction of this court. *L'Enfant Plaza, id.* 229 Ct.Cl. at 281, 668 F.2d at 1213, and cases cited therein.

More importantly, the intent of Congress, as manifested by the 1970 amendment to the Tucker Act and its legislative history clearly was, and is, that NAFIs such as the Eielson AFB CBF were not to receive or be funded from appropriated funds and thus sovereign immunity was not to be removed as to these activities. *See* H.R.Rep. No. 933, 91st Cong.2d Sess. 2, *reprinted in,* 1970 U.S.CODE CONG. & ADMIN.NEWS 3479; *see also Swiff-Train, supra,* 443 F.2d at 1143.[8]

As indicated earlier, the jurisdictional grant to this court under the Tucker Act is limited by the fact that judgments awarded by this court are to be paid out of appropriated monies. 28 U.S.C. § 2517 (1982). Since appropriated funds cannot be obligated relative to the contract plaintiff had with the Eielson AFB CBF, the court cannot exercise jurisdiction over claims arising from said contract. *Kyer v. United States,* 177 Ct.Cl. 747, 751, 369 F.2d 714, 718 (1966), *cert. denied,* 387 U.S. 929, 87 S.Ct. 2050, 18 L.Ed.2d 990 (1967).

### III.

For reasons discussed above defendant's motion to dismiss this case for lack of jurisdiction on the part of the court to entertain the claims asserted in the complaint is granted. The clerk is directed to

---

**8.** Plaintiff's argument that the recreational pavilion could have been built with appropriated funds is under the circumstances of this case meaningless. Congress, of course, can appropriate money for any cause at any time. Adoption of plaintiff's reasoning would mean that sovereign immunity would not bar any NAFI claim in this court and one knows this is not so

by virtue of the 1970 amendment to the Tucker Act and its legislative history. Whether Congress would appropriate funds for a recreational pavilion at Eielson AFB is pure speculation. The critical fact is that Congress did not do so and there are no manifestations or indications in any statute, regulation or contract that it would do so, even if needed.

**196**

enter judgment dismissing the complaint. No costs.