**Allen B. AARON, et al., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 92–311C.**

United States Court of Federal Claims.

Dec. 8, 1992.

**296**

Wilson R. Thiele, Houston, TX, for plaintiff.

Ross D. Cooper and Terrence S. Hartman, Washington, DC, with whom were Stuart M. Gerson and David M. Cohen, for defendant.

## ORDER

### MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction. For the reasons set forth below, the court denies defendant's motion.

## FACTS

This case is a class-action suit brought by civilian and military employees and their dependents to recover fees paid to the Headquarters, United States Army Europe and Seventh Army ("USAREUR") Vehicle Registration Fund ("VRF"). The three named plaintiffs represent persons who have paid licensing or vehicle registration fees in the Federal Republic of Germany and Berlin, and later in unified Germany, from May 1, 1986, to the present, potentially creating a class of over one million members. Plaintiffs assert that the Commander in Chief, Headquarters, USAREUR, collected fees for the registration of privately owned vehicles and driver's licensing that exceeded the cost of administering the vehicle registration and licensing programs, and paid these fees into the Morale, Welfare and Recreation Fund ("MWR"). Plaintiffs claim that Headquarters intentionally assessed a larger fee than necessary in order to generate funds for the MWR, the excess amount which they estimate to be $3 per fee. In addition, effective January 1, 1990, Headquarters increased the registration fee from $10 to $15. Plaintiffs claim that the entire $5 increase from each registration fee has been used to fund MWR activities and in no way reflects increased VRF administrative costs.

Plaintiffs filed suit on April 30, 1992, in the United States Claims Court,[1] claiming that the amounts collected for activities unrelated to the VRF program are an illegal tax. They seek to recover all monies paid in excess of the cost of administering the vehicle registration program, an amount which plaintiffs estimate to be several millions of dollars. Plaintiffs expect to establish the exact amount of damages when they receive information from defendant about the identities of persons who have paid registration or licensing fees since May 1, 1986.

Defendant filed its answer on July 7, 1992,[2] and on August 19, 1992, defendant moved to dismiss the complaint for lack of subject matter jurisdiction.

---

1. The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992), enacted on October 29, 1992, altered the name of the United States Claims Court to the United States Court of Federal Claims. The United States Court of Federal Claims is the successor to the United States Claims Court in all respects.

2. Defendant filed its answer by leave of the court on July 7, 1992. The response predates the amended complaint because plaintiffs had improperly filed the amended complaint on May 15, 1992. Plaintiff's amended complaint was filed by leave of the court on August 6, 1992.

## DISCUSSION

 In considering defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), the court must accept as true any undisputed allegations of fact made by the non-moving party. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir. 1988). When disputed facts relevant to the issue of jurisdiction exist, the court may decide those questions of fact. *Reynolds*, 846 F.2d at 747; *Hedman v. United States*, 15 Cl.Ct. 304, 306 (1988). When subject matter jurisdiction is questioned, the non-moving party bears the burden of establishing the court's jurisdiction. *Reynolds*, 846 F.2d at 748. Here, defendant moves for dismissal claiming that the VRF and the MWR activities funded by excess revenues from the VRF are nonappropriated fund instrumentalities (NAFIs) and as such do not fall within the jurisdiction of the court as defined by the Tucker Act. *See* 28 U.S.C.A. § 1491(a)(1) (Supp.1992). The court is unpersuaded by defendant's argument.

## I. 28 U.S.C. § 1491(a)(1): Court of Federal Claims Basic Jurisdiction

It is well established that the United States "as sovereign, is immune from suit save its consent to be sued." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). Furthermore, for the Court of Federal Claims to exercise jurisdiction, a waiver of traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). This court is mindful that "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1387 (Fed. Cir.1983).

The parties premise their arguments on the Tucker Act. The Tucker Act specifically grants the Court of Federal Claims jurisdiction over claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Other statutory provisions and judicial principles serve to further circumscribe the court's power to render judgment over claims against the United States.

## II. The Nonappropriated Funds Doctrine

 The nonappropriated funds [3] doctrine is derived from the statutory prohibition of 28 U.S.C. § 2517, which provides that "every final judgment rendered by the United States Claims Court against the United States shall be paid out of any general appropriation therefor [sic]." 28 U.S.C.A. § 2517(a) (Supp.1992). Thus, the doctrine limits the jurisdiction of the court by requiring that all judgments be paid from Congressionally-appropriated monies. *United States v. General Elec. Corp.*, 727 F.2d 1567, 1570 (Fed.Cir.1984). The nonappropriated funds doctrine serves to deny access to parties who have a claim based on nonappropriated funds in order to avoid imposing an unauthorized burden on the public treasury. *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 912, 209 Ct.Cl. 446 (1976).

Courts have narrowly construed this exclusion, however, and apply it to deny jurisdiction when "by law, appropriated funds not only are not used to fund the agency, but could not be." *General Elec.*, 727 F.2d at 1570. For example, in *L'Enfant Plaza Properties, Inc. v. United States*, 668 F.2d 1211, 229 Ct.Cl. 278 (1982), the court rejected the government's argument that the Office of the Comptroller of the Currency is a NAFI because, although it had not received appropriated funds in over 20 years, no statutory prohibition prevented Congress from appropriating funds to the Comptroller if needed. *L'Enfant Plaza*, 668 F.2d at 1212. "The test is whether the enabling legislation makes it clear that ap-

---

**3.** Nonappropriated funds ("NAF") are monies which have not been deposited into the United States Treasury and which are maintained independently of the public fisc.

propriated funds will not be made available for the support of the programs and activities authorized by the legislation." *Ford, Powell & Carson, Inc. v. United States,* 4 Cl.Ct. 200, 204 (1983). In *Ford, Powell & Carson,* the Claims Court concluded that jurisdiction was proper where claims rested on a contract pursuant to agreements entered into by the United States and the Kingdom of Saudi Arabia. Although these agreements directed that payment to contractors be made from a trust account established in the United States Treasury by the government of Saudi Arabia, the governing enabling legislation in that case, the Foreign Assistance Act of 1961, provided no " 'clear expression by Congress' that an agency conducting a foreign assistance program is 'to be separated from general federal revenues.' " *Ford, Powell & Carson,* 4 Cl.Ct. at 203 (quoting *L'Enfant Plaza,* 668 F.2d at 1212). Rather, the Act permitted governmental agencies to choose between federal appropriations or funds specially furnished by the country receiving the governmental assistance for payment of services and goods. *Id.* Therefore, jurisdiction was proper. *Id.* at 205.

### III. Plaintiffs' Claim

█ In the instant case, defendant argues that because both the VRF and MWR activities other than the VRF—such as libraries, entertainment, and snack bars—supported by VRF funds are NAFIs, the court is precluded from hearing the claim. The court proceeds by first considering the type of funds that comprise the basis of plaintiffs' claim in order to determine their nonappropriated status, and then applies the law set out above. In determining the status of the VRF, and of NAFIs generally under the MWR, the court recognizes that the "nature, character and purpose are indicated by the activities actually performed, rather than [by] the particular rubric under which a service may have currently chosen to denominate the activity."

*McDonald's Corp. v. United States,* 926 F.2d 1126, 1132 (Fed.Cir.1991).

Army regulations classify the VRF under "Category D, Supplementary Mission NAF Activities." AR 215–1, ch. 2, § III, para. 2–13(k) (October 10, 1990). The VRF is a MWR activity under the Army MWR System which provides "a variety of community, soldier, and family support activities and services." *Id.* § I, para. 2–1(a). While MWR activities rely on both appropriated funds and nonappropriated funds for support, the funding policy for a specific activity, such as the vehicle registration and licensing program, is determined according to its assigned classification. *Id.* at para. 2–1(b), (c). Applying the standard Department of Defense classification system, Headquarters, Department of the Army, almost exclusively funds activities that are directly related to the military mission and yet have little capacity to generate their own revenues with Congressional appropriations. *Id.* at para. 2–1(c); § III, para. 2–6(b); *see, e.g.,* § III, para. 2–9(a). In contrast, activities that are nonessential to the mission and financially self-sustaining receive minimal appropriated funds support. *See, e.g.,* § III, para. 2–12(a). As one of the "Category D, Supplementary Mission NAF Activities," the VRF is one of these activities which are financially self-sustaining. The VRF provides funding for official non-MWR appropriated funds mission areas and receives "almost no [appropriated funds] support." *Id.* at para. 2–13.

In its current form, AR 215 has been in effect since October 10, 1990, when it was reprinted to reveal recent changes (Change 16) made to the February 20, 1984, original publication of the regulation. Prior to October 10, 1990, vehicle registration activities were listed as "Supplemental mission activities/funds" but were included in the "Category D—Business Activities" classification.[4] *See* AR 215–1, ch. 2, § IV, para. 2–12(b)(22)(i) (November 4, 1988). As such, the VRF was authorized "very limited di-

---

**4.** The November 4, 1988, update to AR 215 introduced a complete reclassification of NAFIs. Supplemental mission activities under the new system are no longer separately listed from

business-type NAFIs as they had been under the old system. *See* AR 215–1, ch. 2, § IV, para. 2–17 (April 29, 1988).

rect [appropriated funds] support" because it was regarded as less essential to the military mission and as having the capacity to finance its own expenses. *Id.* at para. 2–12(a). Headquarters, Department of the Army, then reclassified the supplemental mission activities on October 10, 1990. AR 215–1, ch. 2, § III, paras. 2–12, –13. The change served to remove the supplemental mission activities from the category of business activities, moving them into a separate category for activities that are "not MWR activities, but NAF activities which are established to provide funding for MWR adjuncts to official non-MWR [appropriated funds] mission areas." *Id.* at para. 2–13. Supplemental mission activities are thus no longer in the same category as the exchange and other business ventures of "the highest capability of generating revenues." *Id.* at para. 2–12(a).

These regulations in both their earlier and revised editions indicate that Congress has authorized varying levels of appropriated funds support for the VRF. Thus, it is likely that Congress could, and presumably would, appropriate funds if necessary to sustain the activities of the VRF. *See Wolverine Supply, Inc. v. United States,* 17 Cl.Ct. 190, 194–5 (1989). Where an agency's activities receive both appropriated funds and nonappropriated funds support, the nonappropriated funds doctrine does not apply. *Convery v. United States,* 597 F.2d 727, 730, 220 Ct.Cl. 106 (1979) (citing *DeMauro Constr. Corp. v. United States,* 568 F.2d 1322, 215 Ct.Cl. 364 (1978)). While Congress may desire that certain MWR activities become financially self-sustaining, it has given no clear indication, statutorily or otherwise, that it intended to prohibit the use of appropriated monies to fund activities such as the VRF. *See Hearing Before the Morale, Welfare and Recreation Panel of the Readiness Subcomm. of the House Comm. on Armed Services,* 100th Cong., 2d Sess. (1988) (statement of Chairman Marvin Leath); *Hearings Before the Nonappropriated Fund Panel of the Investigations Subcomm. of the House Comm. on Armed Services,* 95th Cong., 1st Sess. 1–2 (1977) (statement of Chairman Dan Daniel).

Thus, the court finds that while the VRF is, in fact, a NAFI, the nonappropriated funds doctrine does not bar this court's jurisdiction over plaintiff's claim because the VRF may receive appropriated funds. The court declines to address plaintiff's argument that subject matter jurisdiction is properly founded upon its claim to a refund of an "illegal tax" on the basis that plaintiff's argument goes to the merits of the case rather than the jurisdictional issue at bar.

### CONCLUSION

The court denies defendant's motion to dismiss for lack of subject matter jurisdiction. The court finds that the VRF to which the plaintiffs claim partial entitlement is funded, albeit minimally, with Congressional appropriations. Where appropriated funds are available, the nonappropriated funds doctrine is inapplicable to deny plaintiffs' subject matter jurisdiction.

It is further ordered that the parties are to submit their JPSR pursuant to RCFC Appendix G ¶ 3 within 45 days of the date on which this order is filed.

The court vacates its June 29, 1992, stay granted to defendant for responding to plaintiff's motion to certify its class. Defendant is directed to file its response to plaintiff's motion fourteen days from the date of this order.

IT IS SO ORDERED.