# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 08-504V
### (Not to be published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| | \* | |
| R.V. *and* E.V., *parents and natural guardians of* | \* | Special Master Corcoran |
| L.V., *a minor*, | \* | |
| | \* | Filed: November 28, 2016 |
| Petitioner, | \* | |
| | \* | Attorney's Fees & Costs; |
| v. | \* | Autism Case; Reasonable Fees |
| | \* | |
| SECRETARY OF HEALTH AND | \* | |
| HUMAN SERVICES, | \* | |
| | \* | |
| Respondent. | \* | |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Robert Joel Krakow, Law Office of Robert J. Krakow, P.C., New York, NY, for Petitioner.

Heather Pearlman, U.S. Dep't of Justice, Washington, DC, for Respondent.

## FINAL ATTORNEY'S FEES AND COSTS DECISION[1]

On July 11, 2008, Petitioners R.V. and E.V. brought a claim on behalf of their child, L.V., seeking compensation under the National Vaccine Injury Compensation Program based upon the claim that L.V.'s autism and developmental regression were caused by the influenza ("flu") vaccine he had received when he was 21 months old. A hearing was held on April 13-14, 2015, and I denied compensation the following year. *R.V. v. Sec'y of Health & Human Servs.,* No. 8-504V, 2016 WL 3882519 (Fed. Cl. Spec. Mstr. Feb. 19, 2016). Petitioners thereafter sought review of my decision with the Court of Federal Claims but were unsuccessful, and later abandoned a Federal Circuit appeal they filed in reaction to the first appellate result. *See R.V. v. Sec'y of Health*

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id.*

*& Human Servs.,* 127 Fed. Cl. 136 (2016), *appeal dismissed* (Fed. Cir. Oct. 26, 2016).

While completion of my entitlement decision was still pending, counsel for both parties filed a joint stipulation on July 6, 2015, regarding interim attorney's fees and costs, agreeing that Petitioner's counsel should receive a lump sum of $210,501.84, in the form of a check payable to Petitioner and Petitioner's counsel, plus a separate award of $3,458.82 to the Petitioners themselves. I accordingly approved an interim award of fees and costs consistent with the stipulation and a judgment was issued in the stipulated sum. Judgment, dated July 10, 2015 (ECF No. 154). This award reflected fees and costs incurred from the time of the case's initiation in 2008 through the entitlement hearing.

Now, with litigation of their claim finally complete, Petitioners made a "final" fees and costs request. *See Petitioners' Motion for Attorney's Fees and Costs*, dated October 31, 2016 (ECF No. 185) ("Final Fees App.")[2]. In it, Petitioners requested an additional award, reflecting post-hearing work performed on the matter (briefing of the motion for review and a motion to redact the entitlement decision, plus the attempt to appeal the denial of that motion to the Federal Circuit). *Id.* at 9. The sum breaks down to (a) $83,824.40 in attorney's fees reflecting the services of attorneys Robert J. Krakow and Susan C. Lee; (b) $662.50 in paralegal fees; and (c) $943.25 in litigation-associated costs. *See* Supplemental Motion for Attorney Fees, filed on November 25, 2016 (ECF No. 188)("Supp. Fees Mot.) at 2. All costs incurred by Petitioners individually during the case's pendency have already been paid in connection with the parties' interim award stipulation. Final Fees App. at 2.

Respondent does not generally contest Petitioners' right to final fees despite losing the case. *See* Response to Petitioners' Application for Attorneys' Fees and Costs, dated November 10, 2016 (ECF No. 186)("Response"). However, Respondent argues that a proper range is approximately half of what Petitioners seek, or between $35,000.00 and $45,000.00, without providing an explanation for the range. Response at 3. For the reasons set forth below, I hereby grant Petitioners' request in part, awarding $45,889.70 in final fees and costs.

## Analysis

I have in other decisions addressed at length the legal standards applicable to evaluating the propriety of a fees request in an unsuccessful case. *See generally Lemaire v. Sec'y of Health & Human Servs.,* No. 13-681V, 2016 WL 5224400, at *3-4 (Fed. Cl. Spec. Mstr. Aug. 12, 2016). At bottom, even in cases that are dismissed, attorneys representing Vaccine Program claimants may still receive a fees and costs award, assuming the matter had reasonable basis during its life. Here,

---

[2] After I called to Petitioners' attention to several errors in the Final Fees App., Petitioners filed a Supplemental Motion for Attorney's Fees and Costs.

Respondent does not assert that the matter lacked reasonable basis prior to Petitioner's decision to seek dismissal, and I do not independently find otherwise (although, as noted below, the subject-matter of Petitioners' claim is one that has been repeatedly, and unsuccessfully, litigated in the Vaccine Program, and it is therefore a proper factor in my decision as to the magnitude of fees to be awarded), based on the overall reasonableness of time devoted to the matter.

This leaves determining the sum to be paid to Petitioners' counsel, and calculating it raises another legal topic repeatedly examined in the decisions of this Court. *See, e.g., Hudson v. Sec'y of Health & Human Servs.,* No. 15-114V, 2016 WL 3571709, at *2-5 (Fed. Cl. Spec. Mstr. June 3, 2016). Attorneys litigating Program claims are entitled to a reasonable hourly rate (a determination depending in part on where counsel practices), and that sum is multiplied by reasonable hours spent on the matter. Special masters have discretion to determine whether the work performed on the matter was reasonable, and need not conduct a line-by-line analysis of the submitted invoices. *Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight per cent of the numbers of hours for which compensation was sought). At bottom, as the Supreme Court instructs, when awarding attorney's fees, special masters may use estimates to achieve "rough justice." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

The first issue to resolve is the hourly rate to be awarded Mr. Krakow and Ms. Lee. Petitioners ask for rates of $413 per hour for Mr. Krakow's work in 2015, raised to $425 per hour for 2016; and $340 per hour for Ms. Lee in 2014, raised to $360 per hour in 2015 and $375 per hour in 2016. Final Fees App. at 6-8. I find that the hourly rates requested herein are reasonable. Mr. Krakow and Ms. Lee practice in the greater New York metropolitan region, and similarly-situated attorneys representing Vaccine Program litigants have been found entitled to forum rates. *See, e.g., Paterek v. Sec'y of Health & Human Servs.,* No. 02-411V, 2014 WL 3339503, at *3 (Fed. Cl. Spec. Mstr. June 12, 2014); *Dimatteo v. Sec'y of Health & Human Servs.,* No. 10-566V, 2014 WL 1509320, at *5-6 (Fed. Cl. Spec. Mstr. Mar. 27, 2014). The rates requested, moreover, are consistent with the ranges paid to forum counsel of equivalent experience, as set forth in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323, at *18-21 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).[3] And as the Final Fees Application itself notes, Mr. Krakow and

---

[3] *McCulloch's* formulation has recently been converted to a matrix that is now published as a downloadable pdf file on the Court of Federal Claims' website, as guidance to counsel requesting fees awards. *See* http://www.uscfc.uscourts.gov/vaccine-programoffice-special-masters (last visited November 7, 2016).

Ms. Lee have been awarded the same rates in other cases. *See, e.g., Raszkiewicz v. Sec'y of Health & Human Servs.,* No. 15-509V, 2016 WL 6599966, at *1 (Fed. Cl. Spec. Mstr. Oct. 14, 2016); *Laderer v. Sec'y of Health & Human Servs.*, No. 09-097V, 2016 WL 3044838, at *3 (Fed. Cl. Spec. Mstr. Apr. 20, 2016).

The second issue requiring resolution is the reasonableness of the hours expended on the matter. All of Mr. Krakow's time, and a large percentage of Ms. Lee's time[4], for which Petitioners seek reimbursement in the present Final Fees Application reflects work performed on this matter post-hearing, or after April 15, 2015. Thus, from late April 2015 until October of that same year, Petitioners' attorneys together billed 100.95 hours (amounting to $41,255.10) to the matter on post-trial briefing, followed by an additional 34.5 hours ($13,867.50) to litigating the request to have the decision redacted, an issue that was not resolved until May 10, 2016. Ex. 202, Filed as Tab 4 (the Declaration of Robert J. Krakow) at 5-6. After my decision issued in February 2016, counsel shifted focus to preparing a motion for review, spending 33.45 hours ($14,216.25) on the matter before filing Petitioners' brief in March 2016. *Id.* at 6. And then, once the Court of Federal Claims had affirmed my decision, counsel focused on pursuing further appeal, expending an additional 9.2 hours ($3,910). *Id.* By October of this year, however, as the invoices reveal, counsel had recommended to the Petitioners dismissal of the Federal Circuit Appeal and instead devoted the final hours billed to this matter to preparation of the present fees request, which amounts to 6 hours ($2,550).

Overall, I find that an award for counsel's post-hearing time is appropriate – but also that some of the time devoted to appealing the entitlement decision, preparing the redaction motion, and then pursuing a possible Federal Circuit appeal thereafter, was unnecessary. Vaccine Program attorneys well know that their representation of claimants is not a license to overbill or take unmeritorious positions in a "test" of the system, while always being assured of compensation at the end. *Perreira v. Sec'y of Health & Human Servs.,* 27 Fed. Cl. 29, 34 (1992) ("[p]etitioners are not given a blank check to incur expenses without regard to the merits of their claim"), *aff'd,* 33 F.3d 1375 (Fed. Cir. 1994). And even in cases where a claim has reasonable basis, special masters retain the discretion to adjust requested fees if the time devoted to pursuit of the matter was not reasonable.

---

[4] Petitioners' fees request includes 26.25 hours of work billed by Ms. Lee between July 2014 and right before the hearing in April 2015. *See* Ex. 202, filed as Tab 2- Invoice for Fees at 1-2. As the Final Fees Application explains, this time was not included in Petitioners' July 2015 interim fees award because it had not been entered into Mr. Krakow's invoice system, and is not duplicative of any items in the prior award. Final Fees App. at 8-9. I will award this time in its entirety.

Here, I am reducing the total amount to be awarded for two reasons. First, I find that in the context of this case, far more time was devoted to post-trial efforts than reasonably necessary. Since the conclusion of the Omnibus Autism Proceeding,[5] Vaccine Act claimants have repeatedly attempted to demonstrate that a wide variety of vaccines could cause developmental problems along the lines of an autism spectrum disorder, or a lesser form of treatable developmental regression. None have succeeded, however. *See, e.g.*, *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2015 WL 7732603, at *4-5 (Fed. Cl. Spec. Mstr. Nov. 3, 2015) (referencing eleven autism claims unsuccessfully tried, plus six that were rejected (over the petitioners' objections) without trial). And Mr. Krakow has represented many of these unsuccessful claimants. *See R.V. v. Sec'y of Health & Human Servs.,* No. 08-504, 2016 WL 3882519 (Fed. Cl. Spec. Mstr. Feb. 19, 2016), *mot. for review den'd,* 127 Fed. Cl. 136 (2016); *Smith v. Sec'y of Health & Human Servs.,* No. 13-677, 2016 WL 1366195 (Fed. Cl. Spec. Mstr. Mar. 9, 2016).

As noted above, Petitioners have already received in excess of $200,000 for their work on this claim, only to reach the same result as that of countless other unsuccessful autism claims. It is not reasonable for attorneys to incur, post-trial, additional fees and costs amounting to nearly $100,000 more in the pursuit of a claim that was facially so similar to so many other contemporaneous, unsuccessful claims. This case did not merit 33 hours of attorney time in

---

[5] In the Omnibus Autism Proceeding ("OAP"), thousands of petitioners' claims that certain vaccines caused autism were joined for purposes of efficient resolution. A "Petitioners' Steering Committee" was formed by many attorneys who represent Vaccine Program petitioners, with about 180 attorneys participating. This group chose "test" cases to represent the entire docket, with the understanding that the outcomes in these cases would be applied to cases with similar facts alleging similar theories.

 The Petitioners' Steering Committee chose six test cases to present two different theories regarding autism causation. The first theory alleged that the measles portion of the MMR vaccine precipitated autism, or, in the alternative, that MMR plus thimerosal-containing vaccines caused autism, while the second theory alleged that the mercury contained in thimerosal-containing vaccines could affect an infant's brain, leading to autism.

 The first theory was rejected in three test case decisions, all of which were subsequently affirmed. *See generally Cedillo v. Sec'y of Health & Human Servs.*, No. 98-916V, 2009 WL 331968 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *mot. for review den'd*, 89 Fed. Cl. 158 (2009), *aff'd*, 617 F.3d 1328 (Fed. Cir. 2010); *Hazlehurst v. Sec'y of Health & Human Servs.*, No. 03-654V, 2009 WL 332306 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *mot. for review den'd*, 88 Fed. Cl. 473 (2009), *aff'd*, 605 F.3d 1343 (Fed. Cir. 2010); *Snyder v. Sec'y of Health & Human Servs.*, No. 01-162V, 2009 WL 332044 (Fed. Cl. Spec. Mstr. Feb. 12, 2009), *aff'd*, 88 Fed. Cl. 706 (2009).

 The second theory was similarly rejected. *Dwyer v. Sec'y of Health & Human Servs.*, No. 03-1202V, 2010 WL 892250 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); *King v. Sec'y of Health & Human Servs.*, No. 03-584V, 2010 WL 892296 (Fed. Cl. Spec. Mstr. Mar. 12, 2010); *Mead v. Sec'y of Health & Human Servs.*, No. 03-215V, 2010 WL 892248 (Fed. Cl. Spec. Mstr. Mar. 12, 2010).

 Ultimately a total of 11 lengthy decisions by special masters, the judges of the U.S. Court of Federal Claims, and the panels of the U.S. Court of Appeals for the Federal Circuit, unanimously rejected the petitioners' claims. These decisions found no persuasive evidence that the MMR vaccine or thimerosal-containing vaccines caused autism. The OAP proceedings concluded in 2010.

preparation of a motion for review when the outcome was so unlikely to be favorable. Three times that much time was devoted to post-trial briefing (Ex. 202 Tab 4 at 5-6); while some of this work was helpful to preparation of a reasoned decision in the case, and should therefore be compensated, it vastly exceeded what counsel should have done given the low odds that Petitioners would in this case prevail when so many others have not.

Second, from my review of the invoices I find many repeating categories of unnecessary time entries. For example, I observe numerous instances in the invoices in which Mr. Krakow billed 6 minutes, or .1 of an hour, to reviewing minute orders or filings that likely required a fraction of that time to review. *See, e.g.,* Ex. 202 Tab 5 at 11 (charging .1 hours on January 28, 2016 for reviewing a notice of substitution); *Id.* at 14 (charging .1 hours on March 22, 2016 for review notice of case assignment); *Id.* (charging .1 hours on March 28, 2016 to review a Non-PDF order granting excess page limit). Excessive time was also devoted to procedural matters, such as requesting redaction of my decision. Petitioners' attorneys together billed 34.5 hours to the topic, despite the fact that Mr. Krakow had months before become aware of the manner in which the same issue in a different autism case was resolved. *R.K. v. Sec'y Health & Human Servs.*, No. 03-632V, slip op. (Fed. Cl. Spec. Mstr. Dec. 1, 2015).

Given the above, it is appropriate to disallow some of the time billed to the matter post-trial as excessive or unnecessary. In the future, attorneys who risk devoting their efforts to pursuing non-Table autism claims[6] must take notice of the fact that these claims are not successful, and must therefore proceed accordingly. While I am not prepared to say, based on my experience adjudicating autism cases, that this case lacked reasonable basis, I also do not find that the policies behind the Vaccine Act's generous fee provisions (which are intended to ensure that counsel are available to claimants) are well-served if Vaccine Program attorneys continue to take on autism injury claims despite their dismal record, secure in the knowledge that their time will inevitably be compensated in full.

I therefore find that a 50 percent reduction in all time billed to the matter after hearing (or after April 4, 2015) is appropriate, to account for the combination of excessive charges specifically,

---

[6] In rare instances that can be counted on one hand, petitioners have successfully established a Table injury – an encephalopathy – after vaccination that resulted in an autistic-like developmental regression. *See, e.g.*, *Wright v. Sec'y of Health & Human Servs.*, No. 12-423V, 2015 WL 6665600 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). In *Wright*, the petitioners met the Table criteria for an "acute encephalopathy" following vaccination by establishing by preponderant evidence that the vaccinated child experienced a seizure followed by loss of consciousness shortly after receipt of pertussis-containing vaccine; the severe reaction lasted for more than 24 hours, with resulting demonstrable significant changes in behavior. But the special master responsible for that decision (former Chief Special Master Vowell) explicitly noted in her decision that petitioners would not have been able to establish entitlement under their non-Table claim, because their expert presented a causation opinion that she found "absurd and biologically impossible." *Wright*, 2015 WL 6665600, at *2.

as well as my general sense that attorney efforts to appeal the entitlement decision were misguided, in light of the numerous other decisions denying similar claims. My intent herein is not to punish counsel individually, but instead to achieve the rough justice of putting the onus on Program counsel to act cautiously when presented with autism injury claims. A far more punitive result, (yet one that the history of these cases also supports) would be to deny fees entirely on reasonable basis grounds.[7]

Based upon the foregoing, I make the following fees award:

(1) Ms. Lee's time not previously requested in the interim fee award for work performed prior to the April 2015 entitlement hearing is granted in full ((15.9 hours x $340) = $5,406.00); and

(2) all remaining time requested for the services of Ms. Lee or Mr. Krakow incurred post-hearing is reduced by 50 percent: $38,877.95 (Reduced from $77,755.90).

This reduction encompasses disallowance of several categories of work. Approximately 94 hours have been cut from Mr. Krakow and Ms. Lee's time, of which 50.5 hours were eliminated from time spent preparing post-hearing briefs (out of 100.95), 16.7 hours were cut from the preparation of the motion to review (out of 33.45), 17.25 hours from time devoted to the motion for redaction (out of 34.5), 4.6 hours from various appeal related matters, and 5.4 hours from miscellaneous overbillings. Such sums are more reasonable given the circumstances.

Otherwise, the costs component of Petitioners' final award request (more than half of which is Petitioners' filing fee costs from its abandoned Federal Circuit appeal) will be granted in full. Even though I have cut back attorney time, I will reimburse counsel for costs associated with working on appeals that were more likely than not untenable. *Masias v. Sec'y of Health & Human Servs.,* 106 Fed. Cl. 700, 704 (2012). I will also allow all time billed to the matter by Mr. Krakow at paralegal rates, as this shows good billing judgment.

---

[7]Significantly, other special masters have invoked reasonable basis as a justification for dramatically cutting back fees requests in unsuccessful autism cases – even where the claims were tried, in whole or part. *See e.g. Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2016 WL 4729530 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (awarding less than $8,000 of request for approximately $41,000 in fees and costs in autism claim that was tried, where special master determined case lacked reasonable basis despite trial); *Hashi v. Sec'y of Health & Human Servs.,* No. 08-307, 2016 WL 5092917 (Fed. Cl. Spec. Mstr. Aug. 25, 2016) (awarding less than half of request for approximately $31,000 in fees and costs in unsuccessful autism case, based on lack of reasonable basis).

**CONCLUSION**

Based on all of the above, the following chart sets forth the total calculation of Petitioner's interim fees award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Krakow's Fees | $68,823.40 | $34,411.70 | $34,411.70 |
| Ms. Lee's Fees | $14,338.50 | $4,466.25 | $9,872.25 |
| Paralegal Costs | $662.50 | None | $662.50 |
| Litigation Costs | $943.25 | None | $943.25 |

Accordingly, I award a total of **$45,889.70** in final fees and costs as a lump sum, in the form of a check jointly payable to Petitioners and Petitioners' counsel, Robert Joel Krakow, Esq. In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the Court is directed to enter judgment herewith.[8]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the Parties' joint filing of notice renouncing the right to seek review.